**Simp R. BRADLEY, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 66–58.**

United States District Court
D. South Carolina
Spartanburg Division.

Nov. 16, 1966.

Kenneth M. Powell, Spartanburg, S. C., for plaintiff.

John C. Williams, U. S. Atty., Greenville, S. C., for the Government.

## ORDER

SIMONS, District Judge.

This is an action to review the "final decision" of the Secretary of Health, Education and Welfare denying plaintiff's application for the establishment of a period of disability and disability benefits, as authorized by Section 205(g) of the Social Security Act, as amended, 42 U.S. C.A. § 405(g), which provides jurisdiction and limits the scope of the court's authority in this action:

> "Any individual, after any final decision of the Secretary made after a hearing to which he was a party * * * may obtain a review of such

decision by a civil action * * *. Such action shall be brought in the district court of the United States * * *. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a re-hearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

Plaintiff filed his application for disability benefits on October 22, 1964, asserting that he became unable to work in June of 1963. He met the special earnings requirements during the effective period of the application and continued to meet such requirements through June 30, 1968. The application was denied initially and again upon his request for reconsideration. The hearing examiner who considered the case *de novo* on October 5, 1965 found that plaintiff had failed to prove himself under a disability as required by the Act. Upon plaintiff's request for review the Appeals Council, on January 18, 1966, affirmed the decision of the hearing examiner, which became the "final decision" of the Secretary on the plaintiff's claim.

The sole issue before this court is whether there is substantial evidence in the record to support the "final decision" of the Secretary that plaintiff did not meet the statutory test of disability and that he was not entitled to the benefits for which he applied. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

The plaintiff was born October 8, 1911. Upon filing his claim for disability in October of 1964 he was fifty-three years of age. He contends that he was unable to work because of "blindness", his three hernia operations, trouble with his side, shoulder and prostate difficulties. Plaintiff completed the sixth grade in school. In 1933 at the age of fifteen he left school and began public employment with an oil mill. He worked in the oil mill during the fall and winter months, and farmed with his father during the spring and summer. He was then later employed in the Inman Mill "heading bales", that is, putting burlap on bales of cotton, for about eleven months. He alleges that he then had a nervous breakdown and was out of work for an additional eleven months.

At about this time plaintiff was turned down for army service on account of his bad eyesight. He thereupon went to the drayton mill and worked as a sweeper for about seven and one-half years. The mill discontinued the sweeping job and claimant, who was unable to perform any other type of work because of his bad eyesight, was laid off. Plaintiff was then fitted with contact lenses and was rehired by the mill on a "cotton beam job", employment that he had previously done for a short period. From 1950, for about three years, plaintiff continued this employment until when he was again laid off because his poor eyesight was interfering with his operation of the machinery. Plaintiff then went to work for the State Highway Department using a pick and shovel. He stayed with the Department for almost two and one-half years. Plaintiff then went to work "creeling" at Landrum Mills, a rug mill, whereupon he started "hurting in his stomach" and discovered that he had a hernia. He had suffered a hernia earlier which had torn out several times. He underwent three operations, and the last time nylon mesh was used in hopes of having the repair hold better. He was required to do heavy lifting at the Landrum plant at this time.

Plaintiff's eye condition is described as "high myopia". Plaintiff, as a child about the age of ten or eleven, was hit in the left eye with a baseball. Plaintiff's vision without contact lenses is 20/200, that is, he could distinguish objects but he could not drive an automobile or perform most useful employment. His corrected vision with contact lenses is 20/40. He alleges that because of the cone shaped cornea of his eyes he is required to wear these lenses instead of glasses. He has worn these lenses, however, for fifteen years. In later years he has ex-

perienced extreme irritation in wearing the lenses. He was treated by one of the reporting physicians for abrasion of the cornea, and he has been limited in his periods of wearing the lenses.

The hearing examiner found that the plaintiff had undergone three hernia operations. Although he apparently concludes that the plaintiff should not do heavy lifting he found that there was no testimony to show why the claimant's last job of "creeling" could not be continued. The examiner overlooks that plaintiff's precise reason for leaving this job was a hernia condition. Dr. Walden examined plaintiff in 1942 noting that plaintiff was very unstable, and diagnosed his condition as "extreme nervous[ness]." Dr. F. Larry Gant, who examined the plaintiff at the instance of the Government, diagnosed plaintiff's condition as "marked chronic anxiety reaction." Dr. Gant further stated "In this examiner's opinion most of his symptoms are of a functional nature, or greatly exaggerated because of an underlying anxiety state."

In Beggs v. Celebrezze, 356 F.2d 234 (4th Cir. 1966), the hearing examiner in that case had stated:

"The anxiety reaction is mainly a response to a deplorable economic situation * * * [t]here is no evidence of hallucinations or delusions or disabling mental disease, and the claimant is oriented as to time and place. The slowing down in his mental processes, and his depression, are not abnormal reaction to five years of unemployment and public assistance. This has had a destructive effect upon the claimant's life and personality. There is no doubt that this man has many psychiatric complaints * * *."

The Fourth Circuit in commenting upon those findings and upholding the anxiety reaction as a determinable impairment, stated:

"The entire record shows a steady and increasing deterioration in the petitioner's mental condition which had already produced totally disabling symptoms by September of 1959, one year after loss of employment. We cannot understand the significance of the examiner's finding that the mental condition was a result and not a cause of petitioner's unemployment. This was obviously true, but the mental condition was nonetheless disabling within the statute."

Aside from a passing reference to the physician who reported plaintiff's nervousness in 1942 the hearing examiner found nothing significant in regard to the plaintiff's mental condition for he makes no other reference to it. The record is plain and uncontradicted that the plaintiff suffers from a "chronic anxiety reaction", in combination with his other impairments. Likewise, as in *Beggs*, it is insignificant that his mental condition is the result of unemployment, poor vision, or other stress.

■ Finding that a claimant is not able to return to his former employment yet is still capable of engaging in some gainful activity must be supported by findings, both as to the particular work the plaintiff is still capable of performing and the availability of these employment opportunities to him in the areas in which he resides. Williams v. Celebrezze, 359 F.2d 950 (4th Cir. 1966). Mrs. Virginia Hardy, a vocational consultant who testified at the hearing on behalf of the Government stated that there was light unskilled work that she would recommend to the plaintiff. She suggested light farming, nursery work, caretaker at a plant, and referred to advertisements in the newspaper introduced into the record. A realistic appraisal of plaintiff's impairments, educational background, experience and prior employment record, and prognosis of the expert medical opinions makes such recommendations remote and speculative at best.

■ An examination of the entire record reveals no substantial evidence to support the Secretary's determination that plaintiff was not mentally and physically incapacitated within the in-

tent and meaning of the statute. To the contrary, I find the record in this case compels a determination that plaintiff was unable to engage in any substantial gainful employment as of the critical date by reason of his mental and physical disabilities.

Accordingly the court finds that the final decision of the Secretary is not supported by substantial evidence and is clearly erroneous and must therefore be reversed.

And it is so ordered.