George MEFFORD, Plaintiff-Appellee,

v.

John W. GARDNER, Secretary of Health, Education, and Welfare, Defendant-Appellant.

No. 16692.

United States Court of Appeals Sixth Circuit.

Aug. 17, 1967.

H. Gene Bell, Knoxville, Tenn., for appellant.

Robert C. McDiarmid, Department of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., David L. Rose, Atty., Department of Justice, Washington, D. C., John H. Reddy, U. S. Atty., Knoxville, Tenn., on brief, for appellee.

Before EDWARDS, Circuit Judge, WEINMAN,* Chief District Judge, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

The Secretary of Health, Education, and Welfare appealed from a judgment of the District Court reversing the holding of the Secretary which was based on the decision of the Hearing Examiner that appellee Mefford was not totally and permanently disabled.

Appellee is a man 55 years old, who is extremely obese, weighing 350 pounds. He never got beyond the second grade in school. His only labor during his entire lifetime was working in the coal mines.

There were three different hearings in this case before a Hearing Examiner. The first hearing (with which we are not directly concerned, but which furnishes a background to the entire case) was held on July 5, 1961, on applications filed on September 3, 1959, and on February 18, 1960, claiming that appellee had not been able to work since 1956, and in which he stated that after an automobile accident, in which he suffered a fractured skull, 25 years previously, his weight had increased from 180 pounds to 318 pounds; that he lost his job in the coal mines because of fainting spells; that he had a stroke in his right side in 1957 while he was looking for lighter work. He had pain in his heart, numb right arm, high blood pressure, and could do no more work than raise a row of cabbages at his home.

Appellee submitted medical evidence of his attending physician who reported that appellee had a markedly enlarged heart, dyspnea, edema at the base of both lungs, and also at both ankles, marked diminution of reflexes of right arm and right leg, and diagnosed his afflictions as: "Severe obesity; markedly enlarged heart; pulmonary edema; congestive heart failure, cerebrovascular accident with residual diminution of both sensor and motor functions of right upper and lower extremities and also right face." Appellee's attending physician further stated that, in his opinion, appellee was "totally and permanently disabled for any gainful work."

Other medical reports substantiated portions of the attending physician's evidence and included diagnoses of possible cervical disc trouble, and possible periarthritis, right shoulder joint. The least favorable evidence was a report from a clinic which revealed that appellee had been turned down for work in the mines because of hypertension; that he had taken treatment for hypertension, but had discontinued it because it aggravated his shoulder pain; that he had gained weight from the time when his skull had been fractured in the automobile accident, in spite of the fact that he was on a weight reduction diet; that there was muscle tenderness in the region of the right lower chest posteriorly; that he had possible hypertension, and albuminuria, etiology undetermined. The physician at the clinic, on a single examination, and without any experience in the treatment of appellee, noted that *insofar as he could determine, claimant was not disabled.* In the light of the evidence of the physician who treated appellee, and also that of two other physicians who stated he was disabled from any manual labor, the statement of the physician at the clinic, even on his own assumption, seems speculative and uncertain.

* Honorable Carl A. Weinman, Chief United States District Judge for the Southern District of Ohio.

■ The Hearing Examiner found that the evidence failed to disclose either that the claimant had a cerebral accident or that he had any significant impairment of his cardiovascular system other than that he had high blood pressure. "There is no reason," he found, "to believe that this condition would not respond to proper medication and other medical management, such as medically supervised weight reduction." There was no evidence whatever to support these findings, which were contrary to those of his attending physician. The Appeals Council affirmed the decision of the Hearing Examiner.

From the medical evidence and especially that of his attending physician, as well as his own testimony, it would appear that appellee was in pretty bad shape. His own physician, as mentioned, stated that he was totally and permanently disabled.

However, appellee was a poor man, and an ignorant man. He could not read or write. He had no lawyer to represent him on the first hearing, and he failed to appeal the first decision of the Hearing Examiner to the District Court within the allotted time.

Following the first decision of the Hearing Examiner and Appeals Council, appellee filed a new application on February 13, 1961, with which we are here concerned. There was then a second hearing on the new application before the Hearing Examiner, who again found there was nothing wrong with appellee other than obesity, which could be controlled by diet and medical care. The Appeals Council denied review. Appellee was not represented by counsel on the hearing. But, in some way, appellee secured counsel and appealed the decision to the United States District Court in Knoxville, Tennessee. On the hearing of this appeal, the District Court ruled "that the evidence showed that claimant does suffer from a 'heart ailment' which prevented him from working in a coal mine," and entered an order in which the court "directed the Secretary to determine what kind of work claimant could do, and whether such work was available to him in the area in which he lived." For some curious reason, known only to themselves, counsel for the Secretary, in their brief, assumed that Judge Taylor, a brilliant veteran jurist of this circuit, did not understand this simple case; and they say: "The court's order was apparently based upon the mistaken premise that the Hearing Examiner had found that claimant could not engage in his prior occupation of mining coal." How they could come to this conclusion is inexplicable, except that they seem resolved to maintain, in this court, the same argument, in the face of evidence so strongly supporting the appellee.

In any event, it is clear that the case was remanded for the sole purpose of ascertaining what kind of light work appellee could do and if such kind of work was available to him in the area in which he lived.

In its judgment the District Court found:

(1) That appellee was seriously afflicted with a heart condition which prevented him from carrying on the only work that his educational and physical qualifications enabled him to carry on;

(2) That since the Examiner had found that appellee was able to do light work, the court held that the case should be re-referred to the Secretary to take additional proof, if necessary, to determine if the kind of light work which the Examiner found appellee could do, is available to him in the area in which he lives.

When the case came before the Hearing Examiner for the second time, he introduced a great mass of evidence that was not before the court at the time it entered its judgment referring the case to the Secretary for a limited purpose.

On the basis of a small part of this additional evidence which was introduced against the objection of counsel for appellee, the Hearing Examiner found that appellee was disabled in no way whatever from pursuing his customary work, and there was no need to make any specific findings with respect to what light jobs

appellee can perform in the area in which he lives.

The Hearing Examiner, however, stated that, in the event it was contemplated that the supplemental hearing was to be limited to the question of what light jobs were available, there were no light jobs in the "immediate area" of appellee's home at Caryville, Tennessee, which claimant could perform; but that, if the area to be taken into consideration included the nearby towns, such as La-Follette, ten miles distant from Caryville, and Clinton, fifteen miles distant from Caryville, there was a probability that several jobs existed in the two largest manufacturing establishments—one, a shirt factory, and the other, a hosiery mill, which appellee, despite his limited education and experience, largely limited to working in coal mines, could do. The Hearing Examiner went on to say that "if these were the only jobs that were available" and if claimant were, in fact, disabled to the extent that he could do only light jobs, the Examiner would conclude that no significant number of jobs were, in fact, available to claimant within a radius of fifteen miles of his home; but that, if the claimant's residence encompasses Oak Ridge and Knoxville, which were forty miles from the place claimant resided, there was "the probable existence" of many jobs there in manufacturing establishments, slaughtering and meat-packing houses, and other types of establishments, that are of a sedentary or semi-sedentary nature which appellee could have performed.

The appellee again appealed to the District Court, claiming that, under the evidence, he was entitled to disability payments, because he could not perform substantial gainful employment. After a hearing on this appeal, Judge Robert L. Taylor entered an order in which he stated that the court "concurs in the findings of the Examiner that the Government has failed to show that there is any work available which claimant can do in the community in which he lives"; and Judge Taylor further found that appellee was permanently and totally disabled within the meaning of the Social Security Act from engaging in a substantial gainful occupation. The decision of the Appeals Council affirming the denial of the claim of appellee was therefore reversed and the cause remanded, with directions that appellee be granted a period of disability and disability benefits in accordance with the Social Security Act.

From such judgment in favor of appellee, the Secretary appeals to this court, claiming that there was substantial evidence to support the Secretary's determination that appellee did not suffer any impairment or combination of impairments that disabled him from pursuing his customary work as a coal miner. The other completely unsubstantiated finding that, even if appellee is disabled, there is available work for him in other industrial fields, is discussed later in this opinion.

When the first appeal from the Hearing Examiner (and the Appeals Council) was before the District Court, Judge Taylor recited in his opinion that "The medical evidence consists of statements from Drs. Rogers, Pryse, and Davis, all of whom examined or treated plaintiff, and Dr. Law, an internist, who was requested to examine him by the Vocational Rehabilitation Center." Judge Taylor, in his opinion, went on to recite:

"It is reasonably certain from an examination of statements of these physicians that plaintiff was suffering with a heart ailment at the time he filed his application. Plaintiff is a very obese man, weighing around 350 pounds. He is some 51 years of age and has worked in the coal mines since the age of 18. It seems that there was an earlier application made by plaintiff which the Government states in its brief is not before the Court at this time.

"In the prior application, statements of Drs. Gilbertson, Dan Davis, Seargeant, Donham, Powers, M. L. Davis, and Acker, were considered.

"Counsel for the Government during the argument indicated that the statements of these doctors are not a part

of the present record. Counsel for plaintiff argues that they should have been made a part of the present record by the Government and since they were not so made that the Court should not consider them.

"The Court agrees that if they are not in the record, and the Court has not been able to find them, that they should not be considered.

"The sole issue for the determination of the Court in the case is whether there is any substantial evidence to support the decision of the Secretary. The Examiner found that plaintiff could do light work, thus indicating that he recognized the fact that plaintiff was afflicted with some disability.

"The record indicates that plaintiff does suffer heart ailment that would prevent him from carrying on coal mining work which is the only work that he appears qualified to do, having·done it, as previously indicated, since he was 18 years of age. The plaintiff only has a second grade education and cannot read and write, and lives in the area of Caryville, Tennessee, which is a coal mining village.

"The Court does not deem it necessary at this time to narrate the contents of the statements of the various doctors who gave statements concerning the condition of plaintiff."

The only medical evidence, therefore, before the court and upon which it relied in its judgment or order was, as is stated, the evidence of Drs. Rogers, Pryse and Davis, who had examined or treated appellee, and Dr. Law, an internist, employed by the Social Security Administration to examine him. On this appeal, it is necessary to recount the medical evidence before the court at the time of its first decision and order of remand, and the following is the only medical evidence that was then before the court.

Dr. Rogers, on March 14, 1962, reported that after making an examination, he found that appellee had an enlarged heart as well as arthritis of the spine, shoulders and arms, and most of the joints of his body—and that, in his opinion, ap-pellee was unable to do any manual labor, due to his condition.

Dr. M. L. Davis reported on March 2, 1962, that appellee had pain and swelling of the shoulders, elbow, wrist joints, hips, knees, and ankle joints. On March 16, 1962, Dr. Davis further reported that appellee had heart trouble, generalized arthritis and heart attack; chest pain with radiation to left shoulder and left arm, and pain in the right side of his head, localized in his right eye and right ear; and that appellee had been totally disabled since 1956. Furthermore, Dr. Davis, in his diagnosis, stated that appellee had a severe cardiac enlargement with attacks of angina pectoris and congestive heart failure, and generalized arthritis affecting all the joints including cervical, dorsal and lumbar spine. In a more "Precise diagnosis, including functional and therapeutic classification, American Heart Association," Dr. Davis reported, after his examination of appellee, that he had:

Hypertensive cardiovascular disease

b) Has marked cardiac enlargement downward and to the left

c) 160/100

d) Very minimal activity produces dyspnea
He has dyspnea and also angina attacks, has chest pain with radiation to left axilland and left arm

e) Has swelling of feet and ankles.

His respiratory difficulty seems to be all of cardiac origin.

Dr. Davis had been treating appellee for the previous two years and stated that his condition was progressive, even with treatment. He further reported that, in his opinion, as a result of his examination and treatment of appellee, he was totally and permanently disabled for any gainful employment.

Six months later, on September 12, 1962, Dr. Davis again stated that he had been treating appellee; that he had been totally disabled for work since 1956 on account of severe osteoarthritis of the spine, and heart trouble, and that he was

markedly obese. Dr. Davis enclosed with his report of the examination the X-rays he had made of appellee's spine and stated that appellee had marked difficulty in moving both shoulders and his arms, "which is probably secondary to this arthritic condition in the cervical spine."

Dr. Roscoe C. Pryse reported on March 21, 1962, that he had examined appellee; that he had chest pain; shortness of breath; pain in joints of right side and left shoulders; stiffness of the spine and could not bend over or stoop without pain; that he had an enlarged heart; hypertension, and generalized arthritis; and that, in Dr. Pryse's opinion, appellee's condition was static; that there should be absolute restriction of any activities on the part of appellee. In addition to stating that, clinically, appellee had an enlarged heart, dyspnea resulting from any activity, frequent bronchial attacks, and that his respiratory symptoms resulted from the cardiac involvement, the physician also reported that appellee had severe soreness and tenderness on his right side, his left shoulder and his spine. As a result of his examination, Dr. Pryse gave as his final conclusion that "this man is totally and permanently disabled from earning his support by manual labor."

The last medical witness whose evidence was considered by the District Court was Dr. W. M. Law, who was employed for the examination by the Social Security Administration. While Dr. Law did not treat appellee, he examined him on one occasion and reported:

"This man's trouble apparently has been related to his heart. He describes some spells that are consistent with hyperventilation attacks but could possibly be related to acute left ventricular failure. * * * The general physical examination showed fairly severe hypertension and very marked obesity. One unexpected finding was an absent right ankle jerk that was not mentioned previously apparently. * * * There is no evidence of congestive failure at this time and I do not think that we can make the diagnosis of obesity heart disease at the present time. He does have hypertension and he may have some vascular strain on this basis since the x-ray was interpreted as showing a cardiac shadow at the upper limit of normal. The albuminuria was also found by Dr. Acker.

"Final diagnosis then is as follows:

(1) Extreme obesity

(2) Hypertension

(3) Albuminuria, cause undetermined." [1]

With this medical evidence, which was the only medical evidence before it, the District Court well might have found that appellee was, from his own testimony and the undisputed medical evidence, totally and permanently disabled from carrying on any substantial gainful occupation, since appellee had never progressed beyond the second grade, had no special education or training and could not read or write, except to sign his name, and that the only labor he performed during his entire lifetime had been working in coal mines.

However, because the Hearing Examiner had found that, while appellee was unable to carry on the only work that his education and physical condition enabled him to perform, nevertheless he could do light work, the District Court entered the following special finding in his judgment and order:

"Since plaintiff is seriously afflicted with a heart condition which prevents him from carrying on the only work that his educational and physical qualifications enable him to carry on, and since the Examiner has found as a fact that he is able to do light work, it is the opinion of the Court, and the Court finds, that the case should be *re-referred to the Secretary to take additional proof, if necessary, to determine if the kind of work which the Ex-*

---

1. Albuminuria. Med. Presence of Albumin in the urine,—generally a symptom of disease of the kidneys. Webster's New International Dictionary.

*aminer finds plaintiff can do is available to him in the area where he lives.*

"See the cases of Jarvis v. Ribicoff, 6 Cir., 312 F.2d 707, Hall v. Celebrezze, 6 Cir., 314 F.2d 686 and Rice v. Celebrezze, 315 F.2d 7 [1963]." (Emphasis supplied.)

The *Jarvis*, *Hall*, and *Rice* cases, supra, were concerned with what type of substantial gainful employment an applicant could perform when he had been disabled from following the physical labor which he had previously performed.

Now, instead of following the directions in the court's order of remand and ascertaining what kind of work the appellee could do—and which was available to him in the area in which he lives, the Hearing Examiner did not limit himself to the court's mandate but reopened the entire case. As counsel for the Secretary state in their brief, the District Court had "ruled that the evidence showed that claimant does suffer from a 'heart ailment' which prevented him from working in a coal mine." The Hearing Examiner then found contrary to his first finding, and contrary to the District Court's opinion and order of mandate, that appellee was not disabled in the slightest way from going back to his prior work as a coal miner.

To arrive at this conclusion, the Hearing Examiner introduced in evidence on the hearing on remand, 184 pages of new exhibits in the form of medical reports, letters, nurses' records, transcripts of hearings, reports of contacts, recommendations, applications for aid to dependent children, and multifarious other data. Before introducing this mass into evidence, the Hearing Examiner wrote a letter to counsel for appellee giving him notice that the Hearing Examiner had gathered this data and had it in his possession.

However, the Hearing Examiner informed appellee's counsel:

"Because of the volume of this additional information, it would not be feasible for this office and at this time to have these reports duplicated simply for purposes of your examination prior to the hearing. If you wish, however, please stop by the office within the next few days and not later than Monday, June 22, and my hearing assistant or my secretary will be glad to show them to you. I suggest that you call by that date because I then plan to send these reports to a vocational witness for his review."

On the hearing, the Hearing Examiner stated to appellee's counsel:

"Mr. Bell, as you know, I have, since this matter was remanded to me for further evidence, attempted to follow through on all possible leads of information which I believe would be pertinent, material and relevant to the issues before us. I called your attention to these additional reports and I believe that I supplied you with a list of the additional documents that I believe should be made a part of the record. Day before yesterday I believe that you had an opportunity to examine them in this office. Did you wish to make any further examination at this time?

"ATTY. BELL: No, sir, I went over those documents rather carefully the other day and I have conferred with my associate on the documents after I went over them and I think that is sufficient.

"EXAMINER: Do you have any objection to my placing into the record the documents that have been identified as proposed Exhibits Nos. B–25 through B–50? Now that supplements the record which is before the court now, as I understand it. Do you have any objections to the receipt of these documents which we have identified as proposed Exhibits B–25 through B–50 into the record we are making?

"ATTY. BELL: * * * We will be agreeable for them to go into the record but we do take exception to them.

"EXAMINER: And what is the basis of your objection, Mr. Bell?

"ATTY. BELL: Our objection is on this point, Sir, is that under the

order and opinion of Judge Taylor in the Federal Court Hearing, the matter of disability as such was not an issue we feel. It was only to determine what a man with this disability can do. We feel this additional medical report is as to his disability, which is not a pertinent question at this time, Sir."

There was no misapprehension in the Hearing Examiner's mind that counsel for appellee was excepting and objecting to the introduction of this additional evidence as the Hearing Examiner stated:

"Claimant's attorneys at the supplemental hearing excepted to the receipt in evidence of these omitted records and the additional medical evidence that has been secured, on the ground that this was beyond the scope of inquiry as defined in the Court's Order. It appears to be their contention that the sole question before the Examiner is to determine what jobs were available for a person in claimant's physical condition in the immediate area where he resides."

■ It was the duty of the Hearing Examiner, after remand by the District Court, to comply with the mandate of the court. The case, as we have noted, was remanded after a finding that appellee "is seriously afflicted with a heart condition which prevents him from carrying on the only work that his educational and physical qualifications enabled him to carry on"; and the Hearing Examiner was therefore directed "to take additional proof if necessary *to determine if the kind of work which the Examiner finds plaintiff can do is available to him in the area in which he lives.*" (Emphasis supplied.)

The Hearing Examiner was bound to obey the directions of the mandate without variation; and failure to follow the instructions therein given was error. He failed to follow the instructions of the District Court, and, instead, introduced a mass of evidence with the purpose of holding, contrary to the decision of the District Court, that appellee was

not suffering from a heart condition which prevented him from carrying out the work in which he was previously engaged. In so doing, and in creating a new case, the Hearing Examiner committed error.

A case directly in point is Hodgson v. Celebrezze, 357 F.2d 750 (C.A.3), in which Judge McLaughlin, speaking for the court, said:

"When this case was before us for the first time we specifically held that the Secretary through his Examiner ' * * * has determined the extent of the impairment suffered by Hodgson. It is clear that Hodgson at best has an impaired right-leg function because of which he retains only a "residual usefulness" in that leg. That that residual usefulness is small indeed is apparent since he has suffered a major loss of the mobility of the knee. Moreover, the court below noted that Hodgson's personal physician described his arthritic condition as having grown progressively worse since the accident in 1955.' Hodgson v. Celebrezze, 312 F.2d 260, 263 (3 Cir. 1963).

"In that decision we reversed the Examiner's conclusion (which had been upheld by the District Court) that the physical impairment from which Hodgson had been determined to be suffering, does not result in inability to engage in substantial gainful activity. As to this, Chief Judge Biggs, speaking for the Court, said:

" 'The only specific job suggested by the record in which Hodgson might obtain substantial gainful employment is that of an elevator operator. We find nothing in the record to indicate that this possibility is a realistic one. Although it is disputed, there is substantial evidence to the effect that Hodgson is physically capable of performing a job which entails sitting and standing but little walking, such as operating an elevator. But assuming that Hodgson has the physical ability, where is he to find such employ-

ment? There has been no attempt to show that this occupation is one in which jobs are open to someone like Hodgson, with his physical limitations and his educational and vocational history. In the absence of such a showing we cannot sustain the denial of benefits to Hodgson. * * *'

"Summing up our finding, Chief Judge Biggs stated:

'" 'We conclude, therefore, first, that the Secretary has applied too strict a standard in this case. Not only must "[t]he capabilities of the individual * * * be viewed in context with his own physical, educational and vocational background", Sobel v. Flemming, 178 F.Supp. 891, 895 (E.D.Pa.1959), but also the following question must be asked and resolved: "[W]hat employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available". Kerner v. Flemming, 283 F.2d 916, 921 (2 Cir, 1960). Second, when the record is tested by the principles set forth above, there fails to appear substantial evidence to support a finding necessary to the Secretary's determination of no disability, viz., that there existed a reasonable opportunity for Hodgson to engage in substantial gainful employment. Neither the bare suggestion in a medical report that the claimant might be able to operate an elevator nor the less specific allusions in the report to "a sedentary job", "some standing job" and "one in which walking is at a minimum" constitute such evidence.' "

Judge McLaughlin, after this introduction and statement of facts and law, came to the point with which we are directly concerned in this case. In his opinion, he continued:

"We then remanded the proceeding with the direction to the District Court 'to enter a judgment requiring the Secretary to determine whether Hodgson is able to engage in substantial gainful activity and is entitled to disability insurance benefits in the light of the principles enunciated in this opinion.'

"For reasons known only to itself the defendant failed to follow our mandate and proceeded to take additional medical and other evidence as to the claimant's physical impairment. That part of the Examiner's decision with reference to claimant's physical impairment comprises forty-six pages of the printed appendix. His conclusions are much the same as he found in the first appeal. The Appeals Council of defendant completely approved of what was practically a retrial of the impairment branch of the claim and endorsed the finding of the impairment to plaintiff's right leg again found by the Examiner. We note that if the defendant had been dissatisfied with any part of our ruling as to Mr. Hodgson's physical impairment, his remedy should have been to apply for certiorari and not, under the guise of necessity, to rehear the physical impairment branch of the case in dealing with the sole question on remand which had been stated precisely in our opinion. The defendant's Examiner in his present decision disagrees with our view of the record with respect to certain of the medical findings. Again, there was no petition for rehearing in that first appeal by defendant-appellee on that or any other element in the litigation. The strange sort of practice followed had no basis either in our opinion, the governing Act or otherwise.

" * * * We returned the claim to the Secretary for him to apply the principles laid down in our opinion and to be guided by them in determining whether Mr. Hodgson is entitled to disability insurance benefits.

* * * * * *

"As we have seen, there is no substantial evidence on the whole case, in-

*deed no warrant in the record, to justify the decision of the Secretary on the sole question remanded to him by this Court for him to pass upon."* (Emphasis supplied.)

The court then reversed and remanded with directions that a judgment for disability benefits be entered in favor of the applicant and against the Secretary.

■ The foregoing opinion of Judge McLaughlin follows the general rule that, on the remand of a case after appeal, it is the duty of the lower court, or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions; and that after a cause has been determined on appeal, the court or agency from which the appeal is taken is without power to open or modify the judgment or order of the appellate court, or to alter or relieve from the precise fulfillment of a specified condition on which the effect of the appellate judgment is made to depend. Moreover, if the cause is remanded with specific directions, further proceedings in the trial court or agency from which appeal is taken must be in substantial compliance with such directions; and if the cause is remanded for a specified purpose, any proceedings inconsistent therewith is error; "nor will a court remand to permit new proofs where it would merely be giving the party an opportunity to reopen the case to make his proofs stronger." Cyclopedia of Federal Procedure. Third Edition. Vol. 14, Section 68.98.

■ "Where the judgment of the lower court is reversed and remanded with specific directions, 'the court below has no discretion in the premises, but must pursue the mandate of the appellate court.'" Malcolmson v. Goodhue County National Bank of Red Wing, 200 Minn. 486, 274 N.W. 652. "When a particular judgment is directed by the appellate court, the lower court is not acting of its own motion, but in obedience to the order of its superior. What that superior says it shall do, it must do, and that alone. Public interests require that an end shall be put to litigation, and, when a given cause has received the consideration of this court, its merits determined, and then remanded with specific directions, the court to which such mandate is directed has no power to do anything but to obey the mandate; otherwise, litigation would never be ended, * * *." Jurgensen v. Ainscow, 160 Neb. 208, 69 N.W.2d 856.

■ "On remand, it is the duty of a trial court to modify a decree as directed by the opinion of the appellate court, and in no other manner." Pritchard et al. v. Fruit, et al., 214 Ill.App. 340. "Where this court reverses an order or judgment and remands the case with specific instructions * * * it is the duty of the trial court to execute the mandate of this court precisely according to its terms, without alteration, modification, or change in any respect." In re Hore's Est., 222 Minn. 197, 23 N.W.2d 590. Upon reversal by the Supreme Court with directions to the court below to render a decree in accordance with views expressed in their opinion, any proceedings had or judgment rendered contrary to such specific directions would be void. Carter v. Superior Court in and for Los Angeles County, 96 Cal.App.2d 388, 215 P.2d 491. "When a judgment has been reviewed by an appellate court and the cause remanded, it is the duty of the lower court to comply with mandate and to obey the directions contained therein without variation. * * * The lower court has no discretion in such a matter and if it is in doubt as to the meaning of the mandate it should look to the accompanying opinion of the reviewing tribunal." Town of Flora v. Indiana Service Corp. et al., 222 Ind. 253, 53 N.E. 2d 161, 164 (Supreme Court of Indiana.) "Where a reviewing court reverses a judgment with directions to render a contrary judgment and to determine a specified issue only, * * * the trial court is bound by the directions given and has no authority to retry any other issue, or to admit new evidence in conflict with the judgment of the reviewing court, or to enter a contrary judgment."

Buttram v. Finley, 73 Cal.App.2d 536, 166 P.2d 654, 656. "Respondents' brief seems to argue that the [trial] court may review and interpret this Court's judgment and even that the validity of the judgment may be tried in the [trial] court. That argument cannot be sustained." Humble Oil & Refining Co. v. Fisher, 152 Tex. 29, 253 S.W.2d 656, 661. "This court may err in its directions to an inferior court, but, however erroneous the directions given may be, it is the duty of the inferior court to strictly follow the directions contained in the mandate of this court." Trustees of Schools v. Hoyt, 318 Ill. 60, 148 N.E. 867.

Because of the clear error which we have pointed out, and which is in agreement with the judgment of the District Court, the following is of no controlling significance, but it illustrates the method by which the Hearing Examiner came to the conclusion that there was nothing the matter with appellee and that he could go back to work in the coal mines.

One of the principal bits of medical evidence which the Hearing Examiner sought out and introduced during the hearing after remand, and upon which he relied, was a signed statement by Dr. Frank London, dated three weeks before the final hearing before the Hearing Examiner. This statement of Dr. London, in response to the Hearing Examiner's written questions, and on the basis of all medical reports which the Hearing Examiner introduced, including those not before the District Court at the time of order of remand, disregarded all the reports of Dr. Davis, appellee's personal physician, that appellee was totally and permanently disabled; the report of Dr. Rogers that appellee was disabled from any manual labor; the report of Dr. Pryse that appellee was totally and permanently disabled from earning his support from manual labor. On the basis of other reports that were never before the District Court at the time of remand, including reports that appellee was totally and permanently disabled, Dr. London stated that the medical evidence did not establish any impairment of appellee's

heart or of his cardiovascular system. This was directly contrary to the evidence of physicians who had treated appellee and who had examined him, and whose reports were before the court at the time of remand. But the remarkable value attached to Dr. London's statement by the Hearing Examiner is the surprising fact that, although the Hearing Examiner relied largely upon this statement, it appears that Dr. London had never examined, or had even seen, the appellee at any time. What could be the explanation for any weight given to such evidence? The opinion of the Hearing Examiner supplies the answer. He states:

"As heretofore noted, claimant's attorneys also excepted to the receipt in evidence of the report from Dr. London. The Examiner is unwilling to concede that Examiners are unable to properly evaluate medical evidence, particularly where they have the benefit of evaluating and comparing numerous reports from the same sources over many years. Nevertheless, the Examiner believes that the opinions of medical authorities, though they have not examined an individual, are exceedingly helpful, particularly where there is *apparent* conflict in the medical evidence." (Emphasis supplied.)

Such a statement as Dr. London's cannot be considered substantial evidence in view of the fact that he never saw or examined appellee, and in face of the medical evidence of physicians who not only treated him over a long period of time but also examined him and came to the determination that he was totally and permanently disabled.

In Hayes v. Gardner, 376 F.2d 517, 520, 521 (C.A.4), the court said:

"In the instant case the opinion evidence supplied by one in the best position to furnish it—Dr. Bartley—substantiated Miss Hayes' claim that she is disabled within the meaning of the Act. Dr. Glendy's opinion is at odds with this evidence. We reach the conclusion that, in view of the opinion evidence as to the existence of a dis-

ability, combined with the overwhelming medical facts, the uncontradicted subjective evidence, and claimant's vocational background, the opinion of a doctor who never examined or treated the claimant cannot serve as substantial evidence to support the Secretary's finding."

In Thomas v. Celebrezze, 331 F.2d 541 (C.A.4), where the Secretary placed reliance upon one portion of the testimony of a physician to the disregard of overwhelming evidence to the contrary, the court held that the Secretary's conclusions could not stand.

In Sebby v. Flemming, 183 F.Supp. 450, 453, 454 (W.D.Ark.), two physicians who had treated the applicant over a period of years stated that he was totally incapacitated, while a physician to whom the applicant had been referred by the Social Security Administration stated that he would place the applicant in a class "with slight limitation of activity." However, Chief Judge John E. Miller, in reversing the decision of the Secretary and remanding the case for the granting of disability benefits, held that there was no substantial evidence to support the conclusions of the Secretary. In arriving at his conclusion, Judge Miller said:

"The Social Security Administration referred the plaintiff to Dr. Alastair D. Hall of Little Rock, Arkansas, for a consultive examination. Dr. Hall concludes his report, dated July 28, 1958, by stating:

"'Conclusions: This 58 year old man gives a history of attacks of weakness, questionable blackouts, and rapid heart action which seem to be attacks of paroxysmal Atrial Tachycardia. In between attacks he is fine but has to be careful about his activity. He is nervous and very anxious about these attacks. He would not take an ETT. The Vital Capacity was 70% of normal. The lungs were clear on X-Ray but the heart was slightly enlarged and there were some calcium plaques along the aortic arch. The EKG showed moderate changes consistent with atherosclerosis and ischemia. He may have had an old occlusion. I would place this man in Class II, possibly III, with slight limitation of activity. If he could overcome some of his fear he would probably get along much more satisfactory. I believe he should be able to do some work.'

\* \* \* \* \* \*

"After reading and considering the whole of the record, the court does not find that the Referee's conclusions are supported by substantial evidence. It is obvious that the findings of the Referee are based almost exclusively on the medical report of Dr. Hall. However, the court does not find that Dr. Hall's report is sufficient to constitute substantial evidence in the light of the other medical evidence and other facts reflected in the transcript as a whole. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

"In discussing the requirement of a review of the whole record in cases of this type, Professor Davis, in Sec. 29.03 of his recent Treatise on Administrative Law, quotes Professor Jaffe at page 127 of Volume 4 as saying:

"'"Obviously responsible men would not exercise their judgment on only that part of the evidence that looks in one direction; the rationality or substantiality of a conclusion can only be evaluated in the light of the whole fact situation or so much of it as appears. Evidence which may be logically substantial in isolation may be deprived of much of its character or its claim to credibility when considered with other evidence."' [Jaffe, Administrative Procedure Re-examined: The Benjamin Report, 56 Harv.L.Rev. 704, 733 (1943).]"

██ Obesity, which seems to be a fairly common condition in workers who have been injured or disabled, is a consideration, not for rejecting their claims for disability benefits, but in explanation why, in many cases employment in a different field is not available to them. In Brown v. Gardner, 251 F.Supp. 770, 772, the court said:

"The Hearing Examiner observed that it seemed extremely doubtful that the skills that plaintiff had acquired as a spinner were readily transferable to any type of work other than that provided by the textile industry. He further noted that plaintiff may have difficulty in doing the stretching and rapid walking required in the job of spinning (which also involves stooping and bending through eight hour shifts), but that she might find work as a sweeper with her remaining functional ability. It is *unrealistic to suppose that an abnormally obese, illiterate, fifty-six-year-old who is able to work with her arms* and shoulders only with pain and who is able to locomote at all only with labor would be able to obtain and pursue gainful activity. Plaintiff had in fact previously attempted to secure employment in the mills in an effort to see if she once would again be able to find the strength to continue working, but she was unable to secure a position at all.

"A realistic appraisal of the record reveals that the preponderance of the evidence supports plaintiff's claim and compels a finding that she was disabled within the meaning of the Act." (Emphasis supplied.)

██ Merely because a physician states that an applicant is not suffering from an impairment that precludes him from engaging in substantial gainful activity; that he has only a slight limitation of activity; and that he should be able to do some work, is not substantial evidence that applicant can engage in substantial gainful activity, when viewed in the light of the evidence of other doctors who had continuously treated applicant, and testified to the contrary,

and in the light of the facts reflected in the transcript as a whole.

██ The foregoing authorities clearly enunciate the law to the effect that it is the duty of courts to examine meticulously the evidence, no matter how burdensome that duty is, because of the helter-skelter nature of the records in these cases, and not adopt the facile way of disposing of an injured applicant's case by reference to, and reliance upon, the statements of one or two physicians, as against the considered statements of many physicians and surgeons who have had more opportunity of examining and treating the applicant, more occasions of making medical reports upon him, and more expertness in diagnosis, as well as upon consideration of the facts reflected in the transcript as a whole.

With regard to the availability of employment to an applicant who was disabled from pursuing his former work, the court, in Williams v. Celebrezze, 359 F.2d 950, 952, 953 (C.A.4), said:

"Furthermore, should the examiner determine that Williams might reasonably be required to move to an industrialized area and there seek employment he must determine whether an illiterate 52 year old with no prior training in any industrial job, with a history of some disability and claims of more, with a rural oriented background would be employable in jobs available in such area. If such jobs are available only in modern industrial employment, consideration must also be given to a realistic analysis of the problems involved in such employment,[1] in addition to the mere physical

"1. This would include consideration of the effect upon employment policies of such factors as company health insurance plans, workmen's compensation, and other fringe benefits."

capacity to perform the job."

The opinion of the Hearing Examiner which held that "there was a probability" that several jobs existed in a shirt factory and a hosiery mill fifteen miles from Caryville, the home of appellee, despite his limited education and experience, re-

stricted to working in coal mines, was no substantial evidence that such jobs were available to him. The further statement of the Hearing Examiner that "if these were the only jobs that were available" and if claimant were, in fact, disabled to the extent that he could do only light jobs, the Examiner would conclude that no significant number of jobs were, in fact, available to claimant within a radius of fifteen miles of his home—is reasonable, and is contrary to the main holding of the Hearing Examiner. Moreover, the opinion of the Hearing Examiner that, if claimant's residence encompassed Oak Ridge and Knoxville, which were forty miles from the place claimant resided, there was "the probable existence" of many jobs there in manufacturing establishments, slaughtering and meatpacking houses, and other types of establishments that were of a sedentary or semi-sedentary nature which appellee could have performed, was not sustained by substantial evidence, since the probable existence, without any further specification of whether such positions were actually available, was a pure speculation on the part of the Hearing Examiner without evidential support.

In Hodgson v. Celebrezze, 357 F.2d 750, 755 (C.A.3), the court said that:

"And it is the settled law in this Circuit that any substantial gainful activity means 'of what is reasonably possible, not of what is conceivable.' Farley v. Celebrezze, 315 F.2d 704, 708 (3 Cir. 1963). As in that decision, nothing in this record suggests any such reasonable possibility for Hodgson. In Stancavage v. Celebrezze, 323 F.2d 373, 378 (3 Cir. 1963) there was a factual picture completely comparable to the one before us. We there held:

"'The suggestion that there is a list of "221 jobs that can be performed by persons with minimal education and that are sedentary in character or require only light exertion" is not very meaningful. There must be something more tangible establishing what employment opportu-

nities there are for a man with his impairment. The failure of the Secretary to establish the existence of that kind of genuine employment opportunity is patent. And it must be presumed that the best available proof on this has been presented. That proof is unacceptable under Hodgson.'" Hodgson v. Celebrezze, 312 F.2d 260, 263 (C.A.3). * * *

"Cases from other circuits affording towering support for this principle are Miracle v. Celebrezze, 351 F.2d 361 (6 Cir. 1965); Torres v. Celebrezze, 349 F.2d 342, 344 (1 Cir. 1965); Massey v. Celebrezze, 345 F.2d 146 (6 Cir. 1965); Ray v. Celebrezze, 340 F.2d 556, 559 (4 Cir. 1965); Celebrezze v. Warren, 339 F.2d 833, 837 (10 Cir. 1964); Ratliff v. Celebrezze, 338 F.2d 978, 983 [11 A.L.R.3d 1124] (6 Cir. 1964); Hanes v. Celebrezze, 337 F.2d 209, 215 (4 Cir. 1964); Thompson v. Celebrezze, 334 F.2d 412, 414 (6 Cir. 1964); Frith v. Celebrezze, 333 F.2d 557, 561 (2 Cir. 1964); Graham v. Ribicoff, 295 F.2d 391, 394 (9 Cir. 1961); Butler v. Flemming, 288 F.2d 591, 594 (5 Cir. 1961). * * *

"Given Mr. Hodgson's age, disability, financial and family factors we were completely convinced on the first appeal that of necessity the reasonable possibility of work which he could undertake must exist in his home region. There was no use of speaking of employment for him somewhere out in the national labor market which he could not reach by ordinary local transportation from home. Reasonable possibility of Hodgson being hired meant and means just that, a realistic possibility. Some pie in the sky job not within a realistic distance of Scranton is not a reasonable possibility of a job for Hodgson."

In Seldomridge v. Celebrezze, 238 F.Supp. 610, 619, a question similar to those arising in the above cases arose and the court said:

"The Dictionary of Occupational Titles makes extensive reference to skills which are required in light industry

jobs. The U. S. Census of Population: 1960 is interesting reading as to the number of persons who are employed in various types of Pennsylvania industries. But none of the data is relevant to determine whether industries in Pennsylvania are hiring men in their late fifties who have disabilities similar to those which plaintiff had. Thus, at the oral argument the United States Attorney was pointedly asked the following:

> " 'THE COURT: * * * What is the basis for my making the inference, or for even more, the Appeals Council making the inference that Pennsylvania industries are hiring men in their late fifties who had the limited disability which the Appeals Council found that he had. What documentation do you have of that?'

To which question the United States Attorney replied with appropriate candor:

> 'None that I can find.'

Neither can the Court find such evidence. Since there is no evidence to suggest 'what employment opportunities are there for a man who can do only what applicant can do?' Kerner v. Flemming, supra, 283 F.2d [916], at 921, and since there has been no 'realistic showing * * * that * * * there [exists] a reasonable *opportunity* for the plaintiff to engage in substantial gainful employment' Fedor v. Celebrezze, 218 F.Supp. 667, 668 (E.D.Pa.1963), and since there is not a scintilla of evidence to suggest 'whether employers in competitive industry would hire claimant to do such work' Secoolish v. Celebrezze, 216 F. Supp. 935, 939 (D.N.J.1963), the decision of the Secretary must be reversed, and summary judgment granted for plaintiff."

In Butler v. Flemming, 288 F.2d 591 (C.A.5) and in Cyrus v. Celebrezze, 341 F.2d 192 (C.A.4), it was held that availability of a job which an applicant might perform must exist *in the general area in which applicant lived.* This court also has held in many adjudications as well as in the most recent case on the subject, that where an applicant is unable to perform his usual occupation, the question then arises as to "what jobs can the man do with his residual physical capabilities and are there such available in the general area in which he resides." Newman v. Gardner, 376 F.2d 25 (C.A.6) (April 12, 1967).

In Bradley v. Gardner, 260 F.Supp. 796, 798 (D.C.S.C.), the court said:

> "Finding that a claimant is not able to return to his former employment yet is still capable of engaging in some gainful activity must be supported by findings, *both as to the particular work the plaintiff is still capable of performing and the availability of these employment opportunities to him in the areas in which he resides.* Williams v. Celebrezze, 359 F.2d 950 (4th Cir. 1966). Mrs. Virginia Hardy, *a vocational consultant who testified at the hearing on behalf of the Government stated that there was light unskilled work that she would recommend to the plaintiff.* She suggested light farming, nursery work, caretaker at a plant, and referred to advertisements in the newspaper introduced into the record. *A realistic appraisal of plaintiff's impairments, educational background, experience and prior employment record, and prognosis of the expert medical opinions makes such recommendations remote and speculative at best."* (Emphasis supplied.)

The evidence in this case and the foregoing authorities amply show that there was no substantial evidence to support the findings of the Hearing Examiner to the effect that applicant was disabled in no way whatever, as well as the further finding that, if he had been disabled from pursuing his prior occupation, there were available other jobs which he could perform, taking into consideration his ability, education, background, and experience.

The above disposes of the issues raised on this appeal which are relevant to a final determination.

In view of the fact that there was no substantial evidence to support any finding that there were jobs available which appellee could perform any place, it seems unnecessary to discuss one of the contentions urged by counsel for the Secretary to the effect that it was error to hold that the availability of such jobs must exist in the general area in which applicant lives.

In this regard, the Secretary now asks this court to reverse itself on the *Massey* case (345 F.2d 146) on the ground that it was error to hold that the availability of a job which an applicant might perform, must exist *in the general area in which applicant lives*. The rule that such job opportunities must exist in the general area in which the applicant lives has been followed by this court for at least four years in numerous cases. It is the same rule previously enunciated by the United States Court of Appeals for the Fourth Circuit in Cyrus v. Celebrezze, 341 F.2d 192, and by the United States Court of Appeals for the Fifth Circuit in Butler v. Flemming, 288 F.2d 591. The reason given for the Secretary's stand is that, in House Report No. 213, 89th Cong., 1st Sess., p. 88, it was stated:

> "In line with the original views expressed by your committee and since reaffirmed, to be eligible an individual must demonstrate that he is not only unable, by reason of a physical or mental impairment, to perform the type of work he previously did, but that he is also unable, taking into account his age, education, and experience, to perform any other type of substantial gainful work, regardless of whether or not such work is available to him in the locality in which he lives."

In the light of the many decisions of the District Courts and the Courts of Appeals holding that where a man is unable, by reason of impairment, to perform the type of work he previously did, he must show he is unable to perform any other type of work available to him in the general area in which he lives, we feel that the statement above mentioned in the House Report is not to be taken as grounds for reversal of the rule laid down by so many courts in the past. It is to be said that the House Report, in this regard, was not agreed to in the Senate Report, nor was any mention made of it in the Conference Report. The report of a committee of the House "does not go very far to show the intention of a majority of both houses of Congress." Porter v. Murray, 69 F.Supp. 400, 402. Since neither the Senate Report nor the Conference Report mentioned the House Report in this respect, we do not feel that it is persuasive of Congressional intent to overturn the many decisions relating to disability payments. Moreover, the many cited cases, including the adjudications of this court, referred to "work available to the claimant *in the general area*" in which he lives, rather than "*in the locality* in which he lives," as stated in the language of the House Report—which seems to mean a limitation to a definite place, rather than to the general area in which an applicant lives.

Appellee became disabled in 1956. He filed his first application for disability benefits on September 3, 1959, and further, on February 18, 1960. He failed to appeal the first decision of the Hearing Examiner within the allotted time. He thereafter filed a new application on February 13, 1961, with which we are here concerned. On the hearing of this application, a long opinion was filed by the Hearing Examiner. The case was thereafter appealed to the District Court, which reversed the Examiner and directed him to ascertain what lighter jobs applicant could perform. Another hearing was held upon his remand and a long opinion by the Hearing Examiner was filed. The case was then appealed for the second time to the District Court, which found in favor of appellee on all grounds and directed the Secretary to pay disability benefits. Eleven years have passed since appellee was disabled and six years have passed since the first hearing before the Hearing Examiner.

Judge Robert L. Taylor heard two appeals in the District Court. In the first, he remanded it to the Secretary for a limited purpose. In the second hearing, he found in favor of appellee and ordered payment of disability benefits. We can not agree with counsel for the Secretary that Judge Taylor, after the careful consideration he gave to this case on two hearings, was mistaken about the facts of this simple case. We concur in his judgment.

 The proof of appellee's disability was strong, and the evidence to the contrary was lacking in substance. "After the long pendency of the application, we see no reason to remand the case for the taking of further testimony." Cyrus v. Celebrezze, 341 F.2d 192, 197 (C.A.4).

As Judge Sobeloff, speaking for the court, declared in like circumstances in Cooke v. Celebrezze, 4 Cir., 365 F.2d 425, 428:

"However, we see no useful purpose in remanding the case once more to the Secretary. Cooke has already spent five fruitless years in consultation with the West Virginia Rehabilitation Division in search of a job classification and it is clear from the vocational counselor's report that his disability and limited education—not any lack of motivation—are the chief obstacles to retraining him for a new job. No theoretical job availability that might be adduced at still another hearing can disestablish the verdict of the Rehabilitation Division after five years of proving, that this claimant's injury has effectively precluded him from engaging in any substantial gainful activities. Over eight years have elapsed since Cooke was forced to abandon his job. His claim for insurance benefits is well into its fifth year of litigation, and we think the District Court should now enter judgment for the plaintiff."

In accordance with the foregoing, the judgment of the District Court is affirmed and the case is remanded with directions to the Secretary to grant the claimed disability benefits.

EDWARDS, Circuit Judge (concurring in part; dissenting in part).

I concur with much of Judge McAllister's opinion in this case—particularly in reaffirmance of this court's views as stated in Miracle v. Celebrezze, 351 F.2d 361 (C.A.6, 1965) and Massey v. Celebrezze, 345 F.2d 146 (C.A.6, 1965).

I find it necessary, however, to add a few comments. In Collins v. Gardner, 373 F.2d 727 (C.A.6, 1967), we reiterated this court's support for the case referred to above. There we dealt with an ex-coal miner suffering from second degree silicosis and thus disabled from performing his previous lifetime occupation. But we held that where the record contained substantial evidence of a residual capacity for light work and availability of such work within the general area where the claimant lived, the United States District Judge had been correct in affirmance of denial of disability benefits.

In the instant case, however, the United States District Judge reversed the findings of the Hearing Examiner and granted disability benefits. The claimant in this case is again an ex-coal miner, 50 years old at the time of the filing of his application. He had worked for 26 years in the mines. He is extremely obese, weighing approximately 325 pounds, although only 5 feet 11 inches in height. He has a second grade education and no skills, other than those associated with coal mining. At the time of his application he lived (and lives) in Caryville, Tennessee, a distance of 38 miles from Knoxville and 10 to 15 miles from somewhat nearer industrial towns of Oak Ridge and LaFollette.

The last Hearing Examiner's report made after an initial remand by the United States District Judge found that claimant was not disabled from performing his prior work, and on that basis proceeded to hold that there were many jobs available which he could do in the economy. He discussed these latter both in terms of a 15-mile radius and a radius of 40 miles, which would include Knox-

ville. He thereupon found that claimant was entitled to no disability benefits.

The Hearing Examiner first held that appellant's heart and back complaints were not disabling. While this conclusion was certainly strongly disputed in this record, there was in my opinion medical evidence to support the Hearing Examiner's findings in this respect.

The Hearing Examiner then concluded appellant was not disabled at all by deciding appellant's extreme obesity was remediable. I find no evidence in this record to support this conclusion.

As the Hearing Examiner noted, "Claimant's principal handicap for employment is his extreme obesity." Obesity is cited as a medical problem in every medical report dealing with appellant's condition. It is related in those medical reports to appellant's heart, back and shoulder complaints.

Appellant's extreme obesity is certainly on this record "a medically determinable physical or mental impairment." *See* Barr, *Obesity: Red Light of Health,* in OVEREATING, OVERWEIGHT AND OBESITY 90 (Nutrition Symposium Series No. 6, The National Vitamin Foundation, Inc., New York, N. Y., Jan.1953).

The Hearing Examiner treats appellant's "extreme obesity" of 25 years duration as if it were a condition which he had willed on himself in order to defraud the Social Security Board. If the facts supported this conclusion, I would certainly agree that no one should be able fraudulently to eat his way onto the Social Security rolls. But such an objective would hardly have led this appellant to carry 325 pounds into 30-inch coal veins for 25 years of coal mining.

The critical finding of fact in this whole case, I believe, is the Hearing Examiner's statement, "There is no showing that claimant could not control his weight by proper diet and medical care." Actually, there is undisputed evidence of appellant's living and working for a quarter of a century with his obesity to show exactly that. There are, of course, the repeated recommendations of doctors that appellant should go on a rigorous diet. But appellant testified without dispute that he had tried to diet and failed to lose weight.

Appellant's condition is medically described as "exogenous," which literally means that the doctors found no internal physical malfunction of the body which caused it. No one took the trouble to explore any emotional compulsion or "mental impairment" of appellant's which might have caused this obesity. Nor does the record contain any evidence of exploration of appellant's own claim that after a skull fracture in an auto accident in 1936, he was told that he would gain weight and there was nothing he could do to reduce. Yet both psychological factors and injuries to the hypothalamus are recognized causes of involuntary obesity.[1]

Much as I would regret further delay in this long protracted litigation, I would remand for testimony on the crucial question of whether or not appellant's obesity is remediable.

---

1. GELVIN and McGAVACK, OBESITY: ITS CAUSE, CLASSIFICATION and CARE 42–47 (Hoeber-Harper, New York, N.Y.1957).