**Marjorie SCHRAM, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. C–3–79–178.**

United States District Court, S. D. Ohio, W. D.

April 7, 1982.

Steven B. Horenstein, Bruce I. Nicholson, Dayton, Ohio, for plaintiff.

Joseph E. Kane, Asst. U. S. Atty., Columbus, Ohio, for defendant.

12. N.Y.C.P.L.R. § 5004 (McKinney Supp. 1981).

DECISION AND ENTRY OVERRULING PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION OF THE MAGISTRATE; MAGISTRATE'S REPORT AND RECOMMENDATION ADOPTED IN ITS ENTIRETY; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OVERRULED; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SUSTAINED; TERMINATION ENTRY

RICE, District Judge.

## I. INTRODUCTION

This matter is before the Court pursuant to Plaintiff's objection, filed under 28 U.S.C. § 636(b)(1)(C), to the Magistrate's Report and Recommendation that Plaintiff's motion for summary judgment be overruled, and that Defendant's motion for summary judgment be sustained. A synopsis of the history of the case is set forth below.

Plaintiff had received Disability Insurance Benefits and Supplemental Security Income Benefits, commencing in October of 1975, due to a schizophrenic reaction, schizoeffective type, and hysterical personality. On March 21, 1978, the Secretary notified Plaintiff that her disability had ended as of February of 1978, and that her entitlement to benefits would therefore end in April of 1978. Plaintiff thereupon requested a hearing. On June 22, 1978, a hearing was held before an Administrative Law Judge (ALJ), before whom Plaintiff appeared, though without an attorney. In addition, the ALJ received testimony from Dr. William R. Chambers, a medical advisor, and Michael A. Tomko, a vocational expert. On December 27, 1978, the ALJ rendered a decision finding that Plaintiff was not under a disability and was not entitled to a continuation in benefits. Plaintiff then requested review by the Appeals Council, and the Council affirmed the ALJ's decision on March 23, 1978.

On April 19, 1979, Plaintiff filed her complaint with this Court, seeking judicial review of the administrative decision. The matter was referred to the U.S. Magistrate on the same date, pursuant to 28 U.S.C. § 636(b)(1). Upon cross motions for summary judgment, the Magistrate, in a "Report and Recommendation" dated June 6, 1980, recommended that Defendant's motion for summary judgment be sustained, and that Plaintiff's motion for summary judgment be overruled, for the reason that the ALJ's decision was supported by substantial evidence.

Plaintiff then filed a motion to review the Report of the Magistrate on June 19, 1980, pursuant to 28 U.S.C. § 636(b)(1)(C).

## II. DE NOVO REVIEW

In reviewing the decision of the Secretary, the Magistrate's task is to determine if that decision is supported by "substantial evidence." Under 28 U.S.C. § 636(b)(1)(C), this Court, upon objections being made to the Report of the Magistrate, is required to make a *de novo* review of those recommendations of the Magistrate's Report to which objection is made. This *de novo* review, in turn, requires this Court to re-examine all the relevant evidence, previously reviewed by the Magistrate, to determine whether the findings of fact by the Secretary are supported by "substantial evidence." 42 U.S.C. § 405(g); *Parish v. Califano*, 642 F.2d 188, 189 (6th Cir. 1981). The Supreme Court has stated that substantial evidence means:

> [M]ore than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). *See also, Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981).

To obtain benefits under the Social Security Act, the burden is initially on the claimant to show disability which prevents him from performing his usual work. The disability must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3),

1382c(a)(3)(C). Once the claimant establishes a prima facie case of disability, the burden shifts to the Secretary to go forward with proof that the claimant has residual capacity for substantial gainful employment, and that there are jobs in the national economy which the claimant can perform. *Young v. Califano*, 633 F.2d 469, 479 (6th Cir. 1980); *Slaven v. Harris*, 508 F.Supp. 280, 283 (S.D.Ohio 1981). To meet this burden, the Secretary must receive evidence to show that the claimant can engage in substantial gainful work in light of the claimant's age, education, work experience, and physical condition. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The preferred method of receiving such evidence is through the testimony of a vocational expert. *O'Banner v. Secretary of Health, Education and Welfare*, 587 F.2d 321 (6th Cir. 1978).

The record indicates that Plaintiff was born on February 7, 1935, finished the eighth grade, has been married twice, had one daughter, but now lives alone. (T. 26–29). She has worked at a variety of jobs, including as an assembly line worker, spot welder, collater, and silk screener. (T. 31–37). Plaintiff quit work in 1974 due to, she says, an allergic reaction to dust on the assembly line. (T. 37). After her husband's death in 1975, she had an emotional breakdown and began to receive disability benefits in that year. (T. 40). She also sustained a back injury from a car accident in February of 1976. (T. 43).

Plaintiff suffered a nervous breakdown in September of 1977, and unsuccessfully attempted to commit suicide, through a drug overdose, at the time. (T. 57–59). She claims she cannot work any more, because her previous jobs are "too fast," she has trouble concentrating, and her back problems prevent her from sitting for long periods of time. (T. 64–65). However, she can care for her personal needs (T. 54), drives a car two or three times a week (T. 50–51), and sleeps "okay." (T. 50).

Plaintiff's recent mental and physical condition is the subject of a number of medical reports in the record. A report from Dr. Cox, dated September 23, 1976, stated that she had a "severely impaired" ability to relate to others, but that she could "probably" manage benefits. (T. 133). A report dated June 26, 1976, from Dr. Barnett, outlined Plaintiff's admission to Grandview Hospital for back pain. She was given therapy, her progress was "uneventful," and her prognosis was listed as "good." (T. 148). Another report from 1976, by Dr. Eduardo Jones, stated that while Plaintiff's orientation, memory and thought processes were not impaired, she was diagnosed as a "severe dependent personality with strong hysterical features." Dr. Jones concluded that Plaintiff was incapable of holding a job on a regular basis, although she was capable of managing her own disability benefits, if the same were granted. (T. 188–190).

Several reports from Grandview Hospital, dated September of 1977, outline Plaintiff's suicide attempt and her subsequent treatment. After treatment, "her emotional status appeared to be stabilized and she was oriented in all spheres," and she "showed progressive improvement" prior to discharge. (T. 160, 155).

Thereafter, Dr. Jones again examined Plaintiff. In a report dated February 18, 1978, he stated that she was well oriented, that her memory and thought processes were intact, but that she had a "strong need to present herself as being disabled." He concluded that she had a "fair to poor" ability to perform routine work. (T. 192–193). Also, Dr. Marilyn Strayer, in a review of the medical evidence in the record up till March of 1978, concluded that Plaintiff only suffered from concentration difficulties and could return to work. (T. 196–197).

At the hearing, Dr. Chambers stated that he had examined all the relevant reports and documents (T. 68), and also, with Plaintiff's permission, asked her a few questions. (T. 69–71). Dr. Chambers then stated that, in his opinion, the evidence indicated that she suffered from schizophrenia residual type 295.9, an impairment of "moderate nature." (T. 71). In addition, Dr. Chambers

was of the opinion that her physical restrictions were not of "major importance." (T. 72). The ALJ also asked two hypothetical questions of Mr. Tomko concerning Plaintiff's ability to engage in work. He first asked Tomko to assume that Dr. Chambers' testimony be "given full credibility," and to consider Plaintiff's age, educational level, and work experience. Tomko replied that Plaintiff could work in a variety of jobs, including employment as an inspector, assembly line worker, small machine operator, or collator. (T. 78–79). However, when the ALJ asked Tomko to assume that Plaintiff's testimony concerning her physical and emotional impairments be "given full credibility," he responded that Plaintiff could not work. (T. 80).

Three post-hearing reports are also in the record. Frank Pierson, a physical therapist, examined Plaintiff, and in a report dated October 19, 1978, concluded that Plaintiff could perform sedentary work, in an environment where she could avoid contact with substances to which she may be allergic. (T. 217). Charles Loomis, a vocational analyst, in a lengthy evaluation set forth in a report dated September 28, 1978, stated that Plaintiff was poorly motivated, had difficulty coping with any pressure, and that "her capacity to maintain herself in competitive work [was] highly remote." (T. 204, 210). However, Loomis did state that she had the physical capacity to perform sedentary work, and could perform routine skills. (T. 204, 213). Finally, Dr. Moronell, a psychiatrist, in a report dated August 11, 1978, stated that Plaintiff's orientation, memory, and comprehension were normal, and that she was "a longstanding neurotic with a predominance of depressive features...." (T. 223). Dr. Moronell concluded that Plaintiff could manage payment benefits if she was found eligible for the same. *Id.*

In his report, the ALJ summarized the aforementioned reports and evidence (T. 12–14), and found that Dr. Chambers' testimony "accurately described" Plaintiff's condition at the time of the hearing. (T. 14). The ALJ also held that the Loomis evaluation was not of "much evidentiary [sic] value," due to Plaintiff's lack of motivation and cooperation during the evaluation. *Id.* The ALJ then summarized the other post-hearing reports, and concluded that Plaintiff's disability "did not continue beyond February of 1978," and that she had improved to the point that she was "capable of simple sedentary nonstressful work in a clean environment." (T. 15). Accordingly, the ALJ found Plaintiff not to be disabled.

The Magistrate, in his Report, summarized the evidence in the record (Report at 3–5), and held that Plaintiff had not made out a prima facie case that her impairments prevented her from returning to her previous work. Report at 5. Even if she had made out a prima facie case, the Magistrate continued, there was substantial evidence, in the form of the Chambers and Tomko testimony, as well as the reports by Pierson and Doctors Jones, Strayer, and Moronell, to indicate that Plaintiff could perform other substantial gainful work. Report at 5–6. Thus, the Magistrate recommended that Plaintiff's motion for summary judgment be overruled, and that Defendant's motion for summary judgment be sustained. Report at 6.

In her motion to review the Magistrate's Report (Doc. # 14), Plaintiff raises several challenges to the Magistrate's, and the ALJ's, consideration of the evidence in the record, as well as to the conduct of the hearing before the ALJ. These grounds for review will be considered seriatim.

■ 1. Plaintiff contends that since Dr. Chambers did not consider the Loomis and Moronell reports, his testimony is of little value, and the ALJ was mistaken for having "heavily" relied upon the same. It is true that Dr. Chambers did not examine Plaintiff, and did not (and could not have) considered the Loomis and Moronell reports at the time of his testimony. However, the testimony of a non-examining medical expert can be properly admitted at a hearing, such as the one herein. *Richardson v. Perales, supra,* 402 U.S. at 408, 91 S.Ct. at 1430. In addition, while the ALJ did rely on Dr. Chambers review of the evidence,

said review as not the *sole* basis for the decision, as the ALJ considered *all* the evidence, including the post-hearing reports.

■ 2. Plaintiff argues that Dr. Chambers' oral examination of her at the hearing was "clearly improper," and further discredits his testimony. However, Plaintiff did not cite any authority, and this Court could not discover any, in support of this proposition. The regulations governing the conduct of hearings are silent on whether anyone besides the ALJ or the claimant (or the claimant's representative) can question witnesses. *See,* 20 C.F.R. §§ 404.927, 404.-929 (1979); 20 C.F.R. §§ 404.929, 404.944 (1981). The Social Security Act states that "[e]vidence may be received at any hearing . . . even though inadmissible under rules of evidence applicable to court procedure," 42 U.S.C. § 405(b), and said hearings are recognized to be non-adversarial in nature. *Cline v. Secretary of Health, Ed. & Welfare,* 444 F.2d 289, 291 (6th Cir. 1971).

■ Based on these principles, this Court cannot hold that, at least in all circumstances, it is improper for a medical expert, under the supervision of the ALJ, to question a claimant, or any other witness at a hearing. In the case herein, Plaintiff gave her consent (in response to an inquiry by the ALJ) to be questioned (T. 69), the questioning lasted for a short period (T. 69–71), and a review of the hearing transcript does not indicate that Plaintiff was discomfited by it, or that the ALJ lost control of the hearing in any manner. Hence, the questioning by Dr. Chambers was not improper as a general matter, or in this particular case. In any event, Dr. Chambers did not indicate that her answers were significant in his review of the evidence, and the ALJ did not refer to said questioning in his decision.

3. Since Dr. Chambers' testimony was allegedly improper, Plaintiff suggests that Tomko's testimony was also improper and to be given no weight, since Tomko's opinion was based on Chambers' opinion. Once again, Chambers' testimony was *not* improper, and Tomko, in his answers to the ALJ's hypothetical question, did not rely solely on Chambers' testimony. (T. 78–80).

4. In an argument similar to that advanced in No. 1, *supra,* Plaintiff contends that Dr. Chambers' opinion would have changed had he considered the Loomis and Moronell reports, and that his opinion, without said reports, is thus of little value. Plaintiff cites *Mefford v. Gardner,* 383 F.2d 748 (6th Cir. 1967), in support of this contention. That case, however, is quite different from the one herein. In *Mefford,* after the remand of an ALJ's decision (for the taking of additional evidence concerning the types of jobs the claimant could do), the ALJ relied on a doctor's opinion, which doctor had disregarded all pre-remand reports in giving his opinion. *Id.* at 759. In contrast, Dr. Chambers, in this case, did not disregard any evidence available at the time of his opinion, and the ALJ, on whose shoulders the ultimate decision with regard to a finding of disability rests, *did* consider the post-hearing reports.

■ 5. The remaining objections to the Report can be reviewed in fairly short order. The second report by Dr. Jones (T. 192–193) does not indicate, as Plaintiff argues, that her ability to work is "severely impaired." The Jones report, summarized above, stated, *inter alia,* that Plaintiff had the ability to perform routine work. While it is true that Dr. Strayer did not examine Plaintiff, her report, reviewing the evidence available to her at the time, was only one part of all the evidence considered by the ALJ. Likewise, Dr. Moronell's report did not, as Plaintiff contends, flatly state that Plaintiff's personality disorder "clearly" prevented her from engaging in substantial gainful employment. In fact, Dr. Moronell did not address Plaintiff's ability to work. Finally, Plaintiff argues that the Pierson report must be disregarded "in view of the rather overwhelming psychological evidence of disability presented" by other reports. The above review of the evidence indicates that this is an inaccurate characterization of the record, and that there is substantial evidence to support the ALJ's conclusion that Plaintiff had sufficiently recovered from her psychological problems, so as to be

able to engage in non-stressful sedentary work in a clean environment.

For these reasons, Plaintiff's objections to the Magistrate's Report must be, and are, overruled.

III.  CONCLUSION

Based on the above analysis of facts and legal principles, the Court finds that the objections of Plaintiff to the Report and Recommendation of the Magistrate are not well taken, and the Court finds that said *Report and Recommendation* should be adopted in its entirety.  It is so ordered.

WHEREFORE, based upon the aforesaid, the Court overrules Plaintiff's motion for summary judgment, and sustains Defendant's motion for summary judgment.  The Plaintiff is, therefore, held not to be entitled to the continuation of benefits as requested.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.