Annette M. COMER, Petitioner–Appellant,

v.

Larry G. MASSANARI, Commissioner of Social Security, Defendant–Appellee.

No. 01–35144.

D.C. No. CV 99–03070.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 2002.

Decided May 16, 2002.

Before B. FLETCHER,
O'SCANNLAIN, and BERZON, Circuit
Judges.

### MEMORANDUM *

Annette Comer appeals the district court's order affirming the Commissioner of Social Security's final decision to deny her application for Title II disability insurance benefits ("DIB") and SSI disability benefits ("SSI"). We have jurisdiction under 28 U.S.C. § 1291, and review the district court's order *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir.2000). We reverse and remand.

Because the parties are familiar with the facts, we recite here only those necessary to explain our decision.

Comer applied for DIB and SSI in the fall of 1995, alleging that she became unable to work because of her disabling condition on August 2, 1993. In her disability report, Comer listed her disabling conditions as "osteoarthritis, high-fluctuating blood pressure, asthma, boney growth in neck, job and personal stress, diabetes, incontinence." Her applications were denied initially and upon reconsideration. Comer requested, and was given, a hearing before an administrative law judge ("ALJ") to contest the rejection of her applications.

At the hearing, Comer described her various medical conditions, *to wit*, pain in her knees and back, high blood pressure, diabetes, incontinence, fatigue, pain in the neck and both shoulders, pain in the arms and hands, an inability to lift objects heavier than a gallon of milk, to stand or sit continuously for more than one hour, or to walk for more than one or two blocks, and depression.

Dr. Morrell, the ALJ's medical expert ("ME") psychologist, concluded that her condition was at root "a depression that precipitated ... with the loss of the job, but that depression has been brought under better control."[1] Dr. Morrell believed

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Cir. R. 36–3.

1. Dr. Morell's questioning of Comer at the hearing is itself cause for concern. Dr. Morell was called by the ALJ as a nonexamining physician, provided with copies of the exhibits of the record, for the purpose of testifying as to his opinion of the claimant's mental status. During her testimony, and prior to Dr. Morell's testimony, the ALJ asked the doctor "do you have questions of the witness?" Though

some of the doctor's questions sought objective information about Comer, *e.g.*, "your last employment was, when, when from your standpoint?," other inquiries by the ME constituted *de facto* cross-examination, such as those which asked the claimant to defend the basis upon which she was seeking social security benefits. The propriety of such questioning is hardly self-evident. *See Schram v. Secretary of Health and Human Services*, 537 F.Supp. 618, 622 (S.D.Ohio 1982) (in instance where ME questioned claimant at hearing before ALJ, court found such questioning not

that Comer could work in positions such as a convenience store clerk.[2]

The ALJ also called a vocational expert ("VE").

Comer argues that the ALJ committed legal error by relying on the VE's opinion which was itself based upon a legally inadequate vocational hypothetical. The ALJ's determination having been affirmed by the Appeals Council and the district court, Comer now appeals to our court.

An ALJ may rely on a vocational expert's response to a series of vocational hypotheticals as a means of determining whether a claimant is able to engage in gainful employment. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162–63 (9th Cir.2001). The hypothetical, however, must "set out *all* the limitations and restrictions of the particular claimant, including pain and an inability to engage in certain activities." *Russell v. Sullivan*, 930 F.2d 1443, 1445 (9th Cir.1991). Without such inclusion the VE's opinion that the claimant can work "has no evidentiary value." *Id.; Cooper v. Sullivan*, 880 F.2d 1152, 1158 n. 13 (9th Cir.1989) (holding vocational expert's testimony must "accurately reflect[ ] all of the claimant's limitations, including pain").

The vocational hypothetical posed to the VE in this case was legally insufficient. First, no cogent, thorough detailing of the limitations on Comer's abilities was given. The ALJ's "hypothetical" was interspersed with questions and additions by counsel and claimant. Many of the ALJ's statements to the VE were so equivocal as to rob them of their ability to inform the VE's determination. One example, among many, was the ALJ's statement that "apparently the claimant has had a history of orthoscopic [sic] of the left knee. It's really not clear from the record how limiting that might be for her."

Also, while the Commissioner claims that the ALJ incorporated the mental limitation findings of the medical expert, Dr. Morell, in its hypothetical, the ALJ in fact never stated what those limitations were. By itself, the absence of such limitations renders the hypothetical inadequate.

The ALJ's hypothetical also failed to incorporate Comer's numerous statements about the pain she suffered, simply observing that Comer "mentioned problems with back and leg pain." Comer, in fact, stated that she had constant pain in her neck and shoulders, as well as regular pain in her hands, back, and arms. The ALJ is required to consider the subjective testimony of the claimant. *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir.1996) (noting that a claimant need not produce evidence of pain other than her own subjective testimony, nor must she present objective medical evidence of a causal relationship between the impairment and the type of symptom so long as such is a "reasonable inference"); 20 C.F.R. §§ 404.1529, 416.929. The ALJ cannot discount a claim of "excess pain" without making "specific findings justifying that decision," *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir.1989), and such "findings must be supported by

improper based upon claimant's prior consent to the questioning, its short duration, and fact that ME did not indicate that "her answers were significant" to his determination).

2. The ALJ erroneously allowed the ME to leave the hearing without submitting his Mental Residual Functional Capacity ("MRFC") form into evidence, and then "recap[ped]" for the vocational expert the medical expert's findings that Comer had a "moderate limitation in items 3, 5 and 6, 11," and that "the rest are significantly limited." There is no evidence that either the ALJ or the vocational expert were aware of or could recall, at that time, what the medical expert's findings were, though the ALJ was required to incorporate such relevant findings into the hypothetical.

clear and convincing reasons why the claimant's testimony of excess pain was not credible, and must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala,* 60 F.3d 1428, 1433 (9th Cir.1995). The ALJ's findings, in this regard, are not sufficiently supported in the record.

Finally, the ALJ nowhere mentioned in the hypothetical his own findings that Comer "must avoid work environments exposing her to lung irritants such as smoke, dust, or fumes," "is unable to perform complex work tasks requiring detailed instructions," and "stressful work tasks." Each of these limitations should have been incorporated into the hypothetical given to the VE.

The Commissioner's reliance on *Thomas v. Barnhart,* 278 F.3d 947 (9th Cir.2002), is misplaced. In that case, we found that the vocational hypothetical given to the VE included all of the claimant's functional limitations, both physical and mental. *Id.* at 956. The functional limitations referred to in the PRTF were specifically testified to by a doctor whose testimony at the hearing the ALJ specifically instructed the VE to credit. *Id.* Our case includes no such instruction by the ALJ.

Because the ALJ relied upon the VE's judgment which was itself grounded in a legally insufficient hypothetical, the decision of the district court to deny Comer's applications must be reversed, and the case remanded for a new hearing before an ALJ.

REVERSE and REMAND

O'SCANNLAIN, Circuit Judge, dissenting.

I respectfully dissent. I cannot agree with the majority's characterization of the ALJ's hypothetical.

First, the majority asserts that the ALJ was unaware of the ME's findings because the ME failed to submit his MRFC form into evidence. *Supra* at 530 n. 2. This is simply untrue. The ALJ and Comer's attorney each stated that each had copied down the ME's MRFC findings. Indeed, the ALJ expressly recapped the ME's MRFC findings as part of the hypothetical. *See Thomas v. Barnhart,* 278 F.3d 947, 956 (9th Cir.2002)

Second, the majority claims that the ALJ offered an inadequate hypothetical because the claimant and her attorney interrupted the hypothetical with comments. *Supra* at 530. This is simply unsound. The VE expressed no problems understanding the hypothetical. Indeed, the interruptions were few and short. In any event, Comer may not complain about her *own* interruptions during the hypothetical. *Cf. Hudson v. Wylie,* 242 F.2d 435, 448 (9th Cir.1957) ("[O]ne may not complain on review of errors below for which he is responsible.").

Third, the majority stresses that the ALJ used equivocal language in the hypothetical. *Supra* at 530–31. This is inaccurate. While giving the hypothetical, the ALJ noted the uncertainty regarding the seriousness of some of Comer's ailments. However, the ALJ resolved any uncertainty by providing a short, definite recitation of Comer's ailments at the conclusion of the hypothetical.

Fourth, the majority claims that the ALJ erred in failing to include in the hypothetical his finding that Comer "is unable to perform complex work tasks requiring detailed instructions." *Supra* at 531. This is not accurate either. In his hypothetical, the ALJ expressly credited the ME's finding that Comer is "moderately limited" in her ability to "understand," to "remember," and to "carry out detailed instructions." *See Thomas,* 278 F.3d at

**532**

956. The majority also asserts that the ALJ failed to include his finding that Comer is unable to work in smoke-filled environments. *Supra* at 531. Contrary to such assertion, the record reveals that Comer's counsel raised this issue at the hearing, and implicitly conceded that this limitation only affected her ability to work as a bartender. Comer would still be able to work as a cashier, rental clerk, outside deliverer, and charge account clerk.

Fifth, the majority faults the ALJ for not crediting Comer's allegations of pain. *Supra* at 531. This is baseless. The ALJ properly rejected Comer's allegations. In March 1996, Dr. Fleischman opined that Comer was capable of "limited work related activities." In June 1996, Dr. Grant stated that Comer could perform "medium duty work." In August 1996, Dr. Burwell opined that Comer would be able to resume work. In June 1997, Dr. Getty stated, "Quite honestly I think this lady is taking advantage of the system and as a result has been given numerous medications that really don't do much for her." Drs. Fleischman, Grant, Burwell, and Getty all treated Comer. The majority stubbornly ignores Comer's treating physicians' opinions as to whether Comer's pain is disabling. *Cf. Regula v. Delta Family–Care Disability Survivorship Plan,* 266 F.3d 1130, 1139 (9th Cir.2001).

The ALJ offered a valid hypothetical and the decision to deny benefits is supported by substantial evidence. I respectfully dissent.