**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RAY A. O'BRYHIM,
Plaintiff-Appellee,

v.

No. 98-1472

RELIANCE STANDARD LIFE INSURANCE
COMPANY,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-95-335-A)

Argued: March 3, 1999

Decided: August 16, 1999

Before WIDENER, NIEMEYER, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Adams Young, CHRISTIE, PABARUE, MOR-
TENSEN & YOUNG, P.C., Philadelphia, Pennsylvania, for Appel-
lant. William Parry Dale, MCCHESNEY & DALE, P.C., Bowie,
Maryland, for Appellee. **ON BRIEF:** Diana L. Moro, CHRISTIE,
PABARUE, MORTENSEN & YOUNG, P.C., Philadelphia, Pennsyl-
vania, for Appellant. Charles F. Fuller, MCCHESNEY & DALE,
P.C., Bowie, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Reliance Standard Life Insurance Company, an ERISA plan administrator, appeals the district court's rulings awarding appellee Ray O'Bryhim (1) additional benefits and interest in excess of $29,000 following a remand to Reliance, and (2) approximately $114,000 in attorneys' fees and costs.**1** We possess jurisdiction of this appeal pursuant to the provisions of 28 U.S.C. § 1291. Finding no reversible error, we affirm.

I.

This action arises under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. On October 1, 1989, appellant Reliance Standard Life Insurance Company (Reliance) issued a long-term group disability insurance policy (Policy) covering eligible employees of the Pohanka Automotive Group (Pohanka). On July 11, 1993, Mr. O'Bryhim, an employee of Pohanka, sought long-term disability benefits from Reliance, based on his claim that he was disabled by Chronic Fatigue Syndrome (CFS). Reliance denied his claim, which Mr. O'Bryhim then appealed through the administrative process authorized by the Policy. Reliance denied Mr. O'Bryhim's appeal, and also denied two subsequent appeals made by Mr. O'Bryhim. After exhausting his administrative remedies, Mr. O'Bryhim filed a complaint against Reliance on March 17, 1995, in

_____

**1** Reliance raised other grounds for appeal in its brief. However, at oral argument, Reliance's counsel confined the appeal to the 1998 award of additional benefits and attorneys' fees to Mr. O'Bryhim. We will do like-wise, because we agree that the only issues of substance are the two iden-tified by counsel -- the 1998 award of additional benefits and attorneys' fees. Indeed, we have considered the unargued issues and conclude that they are without merit.

2

the district court for the Eastern District of Virginia, claiming that Reliance had wrongfully denied his claim for long-term disability benefits. See 28 U.S.C. § 1132(a)(1)(B), (a)(3).

After denying the parties' cross-motions for summary judgment, Judge Cacheris conducted a non-jury trial in December 1995. On February 29, 1996, the district court entered a Memorandum Opinion and Order remanding the case to Reliance. Thereafter, on April 9, 1996, Reliance moved the court for reconsideration, or alternatively, for a new trial. On May 10, 1996, after considering briefs and hearing argument, the court issued an Amended Memorandum Opinion and Order. The Amended Memorandum Opinion corrected one factual error in the February 29, 1996 Opinion, but in all other respects, Reliance's post-trial motion was denied.**2** By order of May 21, 1996, the district court specifically retained jurisdiction over the matter.

On November 20, 1996, Reliance issued its decision on remand awarding Mr. O'Bryhim limited long-term disability benefits. Mr. O'Bryhim then moved the district court for additional benefits and attorneys' fees. After briefing and oral argument, the district court granted Mr. O'Bryhim's motion in part, by its published opinion dated February 23, 1998.**3** See O'Bryhim v. Reliance Standard Life Ins. Co., 997 F. Supp. 728 (E.D. Va. 1998). Reliance now appeals.

II.

Mr. O'Bryhim began working for Pohanka in approximately 1983, and in 1992 was promoted to the position of General Manager of the Pohanka dealership in Fredericksburg, Virginia. As General Manager, Mr. O'Bryhim was responsible for all aspects of the dealership operation, including sales and fixed operations, such as the repair and body shops.

_____

**2** The modification in the May 10, 1996 Amended Memorandum Opinion is not relevant to this appeal. For ease of reference, we will designate the opinion issued after trial as "the May 1996 Opinion." See O'Bryhim v. Reliance Standard Life Ins. Co., No. Civ. A. 95-335-A (E.D. Va. May 10, 1996) (amended memorandum opinion).

**3** For ease of reference, we will designate the district court's published opinion after remand as "the February 1998 Opinion."

3

During his employment with Pohanka, Mr. O'Bryhim began to experience numerous physical symptoms and ailments, including severe fatigue, disorientation, lack of energy, lack of concentration, short-term memory loss, inability to sleep, and cognitive difficulties. He was treated by a number of different doctors for his symptoms.

On September 1, 1992, Mr. O'Bryhim was transferred from the Fredericksburg dealership to the Pohanka dealership in Chantilly, Virginia, where he became the General Sales Manager. At the Chantilly dealership, Mr. O'Bryhim worked fewer hours as a General Sales Manager than he had as General Manager at the Fredericksburg dealership; he also had reduced supervisory responsibilities in his new position. At the Chantilly dealership, he was responsible only for the operation of the automobile sales department, which was staffed by five or six salespeople. As General Manager at the Fredericksburg dealership, however, Mr. O'Bryhim had been responsible not only for a sales department of fifteen to eighteen salespeople, but also for the management of fixed operations. Throughout 1992, Mr. O'Bryhim earned a guaranteed monthly salary of $8,300, translating into an annual salary of over $90,000. After working at the Chantilly dealership for four months, Mr. O'Bryhim resigned from his employment with Pohanka on December 31, 1992. From January 1993 until July 1994, Mr. O'Bryhim was unemployed and unable to work in any capacity.

From 1990 and continuing through 1994, Mr. O'Bryhim sought treatment for his various symptoms with a number of physicians, including Michelle Romano, M.D., Robert Johnson, M.D., Paul Levine, M.D., and Alan Pocinki, M.D. In December 1990, Dr. Romano prescribed medications for Mr. O'Bryhim to treat his fatigue and anxiety attacks. Dr. Romano referred Mr. O'Bryhim to Dr. Johnson in August 1992. Mr. O'Bryhim consulted Dr. Johnson in person or by phone from October 1992 through August 1993. Dr. Johnson prescribed Prozac and other medications to Mr. O'Bryhim throughout this period. Mr. O'Bryhim saw Dr. Pocinki on June 3, 1993, who diagnosed him with Chronic Fatigue Syndrome (CFS), noting that the symptoms of CFS had been present since 1989, but had worsened at the beginning of 1993.

On June 11, 1993, Mr. O'Bryhim filed his claim for long-term disability benefits with Reliance, pursuant to the Policy. In support of his

4

claim, Mr. O'Bryhim submitted the medical records of Drs. Romano, Johnson, Levine, and Pocinki. Reliance denied Mr. O'Bryhim's claim on October 28, 1993, on the ground that his medical information did not indicate that he was "unable to perform the material duties of [his] occupation as of January 1, 1993," when he resigned from his employment with Pohanka. The denial letter also suggested that his claim was rejected for another reason: that he was not under the "regular care" of a physician as required by the Policy.

As pointed out above, Mr. O'Bryhim filed three administrative appeals of this denial of benefits with Reliance--on December 16, 1993; April 8, 1994; and June 22, 1994. Each of his appeals was denied. On March 17, 1995, Mr. O'Bryhim filed his complaint against Reliance in the district court for the Eastern District of Virginia.

III.

In its May 1996 Opinion remanding the case to the Plan Administrator, the district court made several findings of fact that are pertinent to this appeal. These findings of fact included the following: (1) the condition Mr. O'Bryhim developed during his employment with Pohanka was Chronic Fatigue Syndrome; (2) his disability began on September 1, 1992, the date Mr. O'Bryhim was transferred to the dealership in Chantilly, Virginia, as General Sales Manager; (3) Reliance had conducted videotaped surveillance of Mr. O'Bryhim, which did not reveal any evidence adverse to Mr. O'Bryhim's claim; (4) Reliance's Director of Technical Services for Disability, Joseph Randza, testified that it "was not normal to have surveillance done in CFS cases"; and (5) on September 20, 1993, prior to the initial decision denying benefits, a claims adjuster for Reliance recommended approval of Mr. O'Bryhim's claim.

The court remanded the case to the Plan Administrator so that it could "fully hear the evidence presented in Court to arrive at a decision on whether or not to award O'Bryhim benefits." (J.A. 60). The court specifically directed the Plan Administrator to consider additional telephone calls made by Mr. O'Bryhim to Reliance regarding his condition that had not been fully recorded by Reliance's claims examiners, and also to consider certain other testimony.[4] The Remand

_____

[4] Crediting Mr. O'Bryhim's trial testimony, the district court found that Mr. O'Bryhim had made approximately 25 phone calls to Reliance

5

Order stated in pertinent part: "It is ordered . . . that the Plan Administrator take evidence on the nature of plaintiff Ray O'Bryhim's disability and determine the benefits which may be due him as a result." (J.A. 31).

On November 20, 1996, Reliance issued its decision on remand. By this decision, Reliance altered its position on Mr. O'Bryhim's claim, which it had previously denied on four separate occasions, and instead awarded him limited benefits. Reliance awarded Mr. O'Bryhim approximately $45,000 in long-term disability benefits, but its findings diverged from those made by the district court in the May 1996 Opinion in two important respects. First, Reliance determined in its review that Mr. O'Bryhim was not disabled until January 1, 1993 -- four months later than the date the district court found disability onset to have occurred. Second, Reliance determined that Mr. O'Bryhim was not suffering from CFS, but rather from a mental or emotional disorder, which, under the Plan, entitled O'Bryhim to no more than two years of disability benefits.

Approximately a year after Reliance's decision on remand, Mr. O'Bryhim returned to the district court seeking additional relief, including enforcement of the district court's prior findings that Mr. O'Bryhim suffered from CFS and was disabled on September 1, 1992, as well as an award of his attorneys' fees. After a hearing on the matter, the district court ruled partially in Mr. O'Bryhim's favor. It concluded that Reliance had acted arbitrarily and capriciously in its November 20, 1996 award, by substituting its findings for those made by the court in the court's May 1996 Opinion. O'Bryhim, 997 F. Supp. at 732. Accordingly, the court ordered Reliance to pay Mr. O'Bryhim the sum of $17,975 for four months of additional long-term benefits (to cover the period between the onset of the disability on September 1, 1992 and January 1, 1993), plus $11,225 in pre-judgment interest, for a total of $29,200. Id.

_____

regarding his condition that were not fully recorded by the claims examiners. Furthermore, the district court found that information Dr. Levine had provided to a claims examiner, Mr. Lorenzo, had likewise not been adequately recorded. (J.A. 59-60).

Mr. O'Bryhim was also awarded attorneys' fees and costs in the post-remand proceeding. In applying the five-factor test governing the award of attorneys' fees set forth in Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc), the district court found that Reliance had acted in bad faith, emphasizing that Reliance had ignored the district court's pre-remand findings of fact regarding the date of disability onset and the type of disability that afflicted Mr. O'Bryhim. O'Bryhim, 997 F. Supp. at 733. After reviewing the remaining Quesinberry factors and assessing the reasonableness of the fees, the court concluded that Mr. O'Bryhim was entitled to attorneys' fees in the sum of $112,229.25, with costs of $1,934.60, for a total of $114,163.85. Id. at 738.

In his request for additional relief, Mr. O'Bryhim also sought consequential damages sustained as a result of his disability. He claimed that it became necessary for him to sell his family's home because he could no longer pay the mortgage, and that he was also forced to withdraw funds from his 401(k) retirement plan, for which he suffered a tax penalty. The district court denied Mr. O'Bryhim claim for the sales commissions incurred on the sale of his house and the tax penalty for early withdrawal from his 401(k) plan, concluding that Reliance's denial of this requested relief was not arbitrary and capricious. Id. at 732.

IV.

A.

It is well settled that the decision by an ERISA plan administrator to deny benefits is reviewed de novo; however, if the plan confers discretion on the administrator to determine eligibility or to interpret the terms of the plan, the denial decision is reviewed by the court for abuse of discretion. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111, 115 (1989); Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232-33 (4th Cir. 1997). A reviewing court determines de novo whether the ERISA plan confers discretionary authority on the administrator, and if so, whether the administrator abused that discretion. Ellis, 126 F.3d at 233 (citation omitted). In this proceeding, the district court held, and the parties do not dispute, that the Policy con-

7

fers discretion on the administrator. The parties point to the language in the "Insuring Clause," which states:

> INSURING CLAUSE: We will pay a Monthly Benefit if an Insured:
>
> (1) is Totally Disabled[5] as the result of a Sickness[6] or Injury covered by this Policy;
>
> (2) is under the regular care of a Physician;
>
> (3) has completed the Elimination Period; and
>
> (4) submits satisfactory proof of Total Disability to us.

(J.A. 350) (emphasis added).

In construing "satisfactory proof" language that was either identical or similar to the language contained in the Policy here, other courts have also concluded that such language confers discretion to determine eligibility for benefits.[7] See, e.g., Yeager v. Reliance Standard

_____

[5] The Policy states that

> "Totally Disabled" and "Total Disability" mean, with respect to [Mr. O'Bryhim's class], that as a result of an Injury or Sickness:
>
> (1) during the Elimination Period and for the first 60 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation. We consider the Insured "Totally Disabled" if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

(J.A. 346).

[6] Sickness is defined in the Policy as an "illness or disease causing Total Disability which begins while insurance coverage is in effect for the Insured." (J.A. 346).

[7] Although we have not yet definitively interpreted whether "satisfactory proof" language grants discretion to the plan administrator, we have previously indicated, in an unpublished opinion, that identical language in another policy issued by Reliance does confer discretion. See Wilcox v. Reliance Standard Life Ins. Co., 1999 WL 170411, at **2 (4th Cir. March 23, 1999) (unpublished).

8

Life Ins. Co., 88 F.3d 376 (6th Cir. 1996); Donato v. Metropolitan Life Ins. Co., 19 F.3d 375 (7th Cir. 1994); Ceasar v. Hartford Life & Accident Ins. Co., 947 F. Supp. 204, 206 (D.S.C. 1996); but see Kearney v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999) (en banc). We are convinced by the reasoning in the majority of these cases that the "satisfactory proof" language of the Policy confers discretion on the Plan Administrator, and thus an abuse of discretion standard for judicial review is appropriate. This discretionary standard is circumscribed in this instance, however, by the Plan Administrator's conflict of interest.

Where, as here, the insurer wears two hats, and acts as both the fiduciary of the Plan's beneficiaries and as the Plan's insurer, the reviewing court must carefully consider this conflict of interest in its review. Ellis, 126 F.3d at 233. We have previously explained the nature of the conflict: "For a fixed premium from the employer, [the insurance company] both funds and administers the plan, so it bears the financial consequences -- and reaps the financial rewards -- of its own coverage decisions." Bedrick v. Travelers Ins. Co., 93 F.3d 149, 151 (4th Cir. 1996).

The Supreme Court observed in Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), that where the plan administrator is "operating under a conflict of interest, that conflict must be weighed as a `facto[r] in determining whether there is an abuse of discretion.'" We have stated that "[i]nasmuch as the law is highly suspect of `fiduciaries' having a personal interest in the subject of their trust, the `abuse of discretion' standard is not applied in as deferential a manner to such plans." Bedrick, 93 F.3d at 152 (citing Bruch, 489 U.S. at 115). We have further explained that

> the fiduciary['s] decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

Doe v. Group Hospitalization & Med. Servs, 3 F.3d 80, 87 (4th Cir. 1993). We have referred to this less deferential standard as the "modified abuse of discretion standard." See Ellis , 126 F.3d at 233. We

9

have also noted that where the insurer processes and pays claims, and acts as plan administrator,

> [e]ven the most careful and sensitive fiduciary in those circumstances may unconsciously favor its profit interest over the interests of the plan, leaving beneficiaries less protected than when the trustee acts without self-interest and solely for the benefit of the plan.

Bedrick, 93 F.3d at 154 (quoting Doe, 3 F.3d at 86-87).**8**

On the one hand, Reliance, acting as Plan Administrator, was in a fiduciary relationship with the Plan beneficiaries (including Mr. O'Bryhim), and was obligated to function accordingly in its decision-making process. See 29 U.S.C. § 1104(a)(1)(A) (ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits . . . and defraying reasonable expenses"). On the other hand, Reliance, as the insurer, reaps the financial rewards of its claims decisions, and, as a subsidiary of a publicly held and traded corporation, has a conflicting fiduciary obligation to maximize profits for the benefit of shareholders.**9** The existence of these conflicting fiduciary duties does not mean that Reliance's decisions as Plan Administrator are necessarily tainted, but this conflict does circumscribe its exercise of discretion and compels that judicial review of Reliance's decisions as Plan Administrator take full account of its conflict of interest.

B.

_____

**8** Despite what appears to have been some confusion in the district court regarding the appropriate standard to apply-- "arbitrary and capricious" or "abuse of discretion" -- we believe that the result would have been the same under either standard. See Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 n.4 (4th Cir. 1994). Moreover, the district court clearly weighed Reliance's conflict of interest in its review. (J.A. 53).

**9** Reliance is owned by Delphi Financial Group, a publicly traded insurance holding company, which is listed on the New York Stock Exchange (symbol: DFG).

10

As discussed above, the district court made two significant factual findings in its May 1996 Opinion that provided the basis for its ruling in February 1998 granting Mr. O'Bryhim additional benefits and attorneys' fees. First, after reviewing the evidence in the claims file, the district court found that Mr. O'Bryhim's disability, for the purposes of eligibility for long-term disability benefits, began on September 1, 1992. Second, the court found that Mr. O'Bryhim's condition was, in fact, CFS. In its November 1996 decision awarding benefits to Mr. O'Bryhim, Reliance failed to adhere to these findings.

Reliance argues here that the district court abused its discretion by making these factual findings, when its May 1996 remand to Reliance encompassed the taking of additional evidence regarding the nature of Mr. O'Bryhim's disability and the determination of whether benefits were owed him. Reliance further contends that even if the district court had authority to make factual findings, they were nonetheless clearly erroneous. The record does not indicate why the district court proceeded as it did -- instead of, for example, remanding for a new benefits determination, or simply reversing and granting benefits. However, it certainly did not abuse its discretion when it remanded Mr. O'Bryhim's case in May 1996 to Reliance, as the Plan Administrator, for further consideration of Mr. O'Bryhim's claim.

As we have pointed out, this claim had been contested actively for several years through the administrative process, including three unsuccessful appeals to Reliance by Mr. O'Bryhim. When Mr. O'Bryhim sought judicial relief after exhausting the administrative process, the district court justifiably believed that findings by the court would guide and enhance Reliance's timely determination of benefits on remand. The court's findings in its May 1996 Opinion -- that Mr. O'Bryhim's disability was CFS and that it began on September 1, 1992 -- served, in essence, to forecast to Reliance that it would be an abuse of Reliance's discretion for it to determine otherwise on remand.

Most significantly, the district court's findings of fact were not clearly erroneous. First, there is ample evidence that Mr. O'Bryhim could not "perform the material duties of [his] regular occupation," i.e., General Manager, as of September 1, 1992. Under the Policy, an individual may be totally disabled if, inter alia, he is only capable of

11

performing part of the duties of his employment on a full-time basis.**10** As General Manager of the Fredericksburg dealership, Mr. O'Bryhim often worked sixty to sixty-five hours per week and was responsible not only for sales, but also for all fixed operations as well, such as auto service and repair. Because of Mr. O'Bryhim's ongoing symptoms of severe fatigue, lack of concentration, poor memory, headaches, and the like, he was unable to perform the full duties of his occupation. On September 1, 1992, Mr. O'Bryhim was transferred to a smaller dealership in Chantilly where he was given the less taxing position of General Sales Manager.

As General Sales Manager at the Chantilly dealership, Mr. O'Bryhim had a staff of six, as opposed to a staff of fifteen to eighteen at the Fredericksburg dealership, and his duties were limited only to sales; unlike his previous position, he had no responsibility for any other aspects of the dealership. He also worked only forty hours a week in his new position.

The medical evidence confirms that Mr. O'Bryhim was totally disabled under the terms of the Policy prior to his resignation from Pohanka. For example, and of significance, Dr. Pocinki stated in a report to Reliance that he believed that Mr. O'Bryhim "was totally disabled for quite sometime before January 1, 1993." (J.A. 678). Dr. Pocinki also observed that it was common for doctors who were unfamiliar with CFS to misdiagnose it as depression or another emotional disorder, as was the case with Mr. O'Bryhim. Dr. Pocinki further explained that

> Mr. O'Bryhim's symptoms and the course of his illness have in fact been so characteristic of the Chronic Fatigue Syndrome that there is no doubt in my mind that, had he only seen a physician with some knowledge of this illness, the proper diagnosis could have been made more than a year ago, and perhaps as early as 1990. (J.A. 678).

Accordingly, the district court did not clearly err in finding that Mr. O'Bryhim was demoted because of his disability to a lesser position

_____

**10** **See supra** note 5.

at the Chantilly dealership, and that "he was unable to perform the materialities of his regular occupation . . . at Pohanka beginning September 1, 1992, and that he was unable to perform any occupation from January 1, 1993, to July 25, 1994."

Second, the district court did not clearly err in finding that Mr. O'Bryhim suffered from CFS. The medical evidence submitted by Mr. O'Bryhim in support of his claim for benefits shows that he displayed a number of symptoms, beginning at least in 1990, that were indicative of CFS. Drs. Levine and Pocinki both diagnosed CFS. Dr. Levine explained that there was no diagnostic test for CFS, but that there are "certain abnormalities often seen in patients with this illness." Dr. Levine also found that Mr. O'Bryhim met the strict case definition of CFS published in the Annals of Internal Medicine. (J.A. 664). Dr. Pocinki explained that O'Bryhim had many"classic" symptoms of CFS and that his condition "unquestionably" satisfied the Center for Disease Control's diagnostic criteria for CFS.

Reliance ignored these findings, and made its own contrary determinations in its consideration of Mr. O'Bryhim's claim on remand in November 1996. Applying the modified abuse of discretion standard to the Reliance decision, it was an abuse of discretion for Reliance to reject the district court's findings, and instead substitute its own findings.

Although Reliance also argues that it was not bound by the district court's findings because the remand order did not expressly direct Reliance to adopt the court's findings of fact, this assertion must fail. In its April 1996 motion for reconsideration or, alternatively, a new trial, Reliance sought to overturn certain of the district court's findings of fact -- including the determination that Mr. O'Bryhim's disability was CFS and that disability onset was September 1, 1992.[11] In seeking such relief, Reliance clearly evidenced its understanding that these findings were binding, and sought to have them altered. When Reliance lost its motion for reconsideration, it chose, at its peril, not to adhere to the district court's decision, but simply to ignore it. This

_____

[11] In its motion for reconsideration or a new trial, Reliance argued that the findings "should be disregarded or reversed by the Court and a modified order should be entered." (J.A. 851).

13

it could not do. See Mefford v. Gardner, 383 F.2d 748, 758 (6th Cir. 1967) ("[T]he general rule [is] that, on the remand of a case after appeal, it is the duty of the lower court, or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation.").

After considering Mr. O'Bryhim's motion for additional relief following remand, the district court granted supplemental benefits to Mr. O'Bryhim for the period between September 1, 1992, and January 1, 1993. Furthermore, Reliance's substitution of its own findings of fact for the district court's findings in the May 1996 Opinion served as the primary basis for the court's finding that Reliance had acted in bad faith.

V.

The district court awarded attorneys' fees and costs in the sum of $114,163 to Mr. O'Bryhim. This award was based primarily on the court's finding that Reliance had engaged in bad faith conduct from the time Reliance first evaluated Mr. O'Bryhim's claim in the summer of 1993 through the remand decision in November 1996, when it ignored the district court's findings of fact. Reliance argues that the district court abused its discretion in awarding O'Bryhim attorneys' fees. Reliance claims that the district court's finding of bad faith, which provided the basis for the award of attorneys' fees, was clearly erroneous.

Under ERISA, the court may, in its discretion, allow a reasonable attorneys' fee and costs. See 29 U.S.C.§ 1132(g)(1). In this case, the district court properly applied the five-factor test, to guide the exercise of its discretion, as articulated by this court in Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc). The five factors are:

> (1) degree of opposing parties' culpability or bad faith;
>
> (2) ability of opposing parties to satisfy an award of attorneys' fees;

14

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

Id. at 1029 (citation omitted).

The district court concluded that all of the factors, except for the fourth, justified awarding attorneys' fees to Mr. O'Bryhim. O'Bryhim, 997 F. Supp. at 733. In its ruling, the court focused on the first factor, the "bad faith factor," specifically finding that "Reliance acted in bad faith throughout the consideration of O'Bryhim's claim and on remand." Id.

In support, the district court catalogued a number of examples of bad faith on the part of Reliance,[12] including the following:

_____

[12] The district court's opinion specifically stated as follows:

> Examples of Reliance's "bad faith" in processing O'Bryhim's claim began as soon as O'Bryhim filed his claim. At trial, this Court found that Reliance wrote to O'Bryhim's treating physician requesting medical records, and, prior to receiving any records, requested a video-tape surveillance of O'Bryhim. The surveillance did not reveal anything negative to O'Bryhim's claim. As Joseph A. Randza, Reliance's Director of Technical Services for Disability, testified, it was not normal to have surveillance done in CFS cases. After trial, this Court issued a Memorandum Opinion and Order, remanding O'Bryhim's case to the Plan Administrator, and directing the administrator to take into account the facts discovered at trial. The Court directed the Plan Administrator also to obtain a job description for O'Bryhim and to obtain records of certain phone calls. On remand, Reliance overturned this Court's findings of fact, specifically finding that O'Bryhim was not suffering from CFS (but was instead suf-

15

(1) Reliance had conducted a videotape surveillance of Mr. O'Bryhim before receiving any medical records it had requested from his treating physician; (2) the videotape surveillance, which was not normally done in CFS cases, revealed nothing adverse to Mr. O'Bryhim's claim; (3) Reliance ignored the court's finding of fact that Mr. O'Bryhim suffered from CFS, but instead found on remand that his disability was a mental disorder (which limited Reliance's liability); and (4) Reliance ignored the court's finding that Mr. O'Bryhim was disabled on September 1, 1992, and instead found that disability onset did not occur until January 1, 1993. Id.

Although an award of attorneys' fees is reviewed for abuse of discretion, the determination of bad faith supporting an attorneys' fees award is a finding of fact that we review for clear error. See Hyatt v. Shalala, 6 F.3d 250, 255 (4th Cir. 1993). Under the clear-error standard, we must affirm the district court's finding of bad faith unless, after reviewing the record, we are "left with the definite and firm conviction that a mistake has been committed." Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 909 (4th Cir. 1989) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

Having carefully reviewed the record, we are unable to say that we are definitely and firmly convinced that a mistake has been made. We are thus unable to disturb the district court's finding of bad faith, and, consequently, uphold the award of attorneys' fees to Mr. O'Bryhim.

VI.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

_____
      fering from a mental disorder, which limited Reliance's liability), and also that O'Bryhim was not disabled until a date four months after the date which this Court had set.

O'Bryhim, 997 F. Supp. at 733.

16